IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-00649-CBS

WILLIAM R. STEVENSON,

        Plaintiff,

v.

R. CORDOVA, in his individual and official capacities;
D. NUNEZ, in his individual and official capacities;
M. HOLLOWAY, in his individual and official capacities;
K. TOPLISS, in his individual and official capacities;
C. WILLIAMS, in his individual and official capacities;
K. CLINKINBEARD, in his individual and official capacities;
J. ESPINOZA, n his individual and official capacities;
G. SULLIVAN, in his individual and official capacities;
J. HANSON, in her individual and official capacities;[1]
J. BUFMACK, in his individual and official capacities;
M. BENAVIDEZ, in his individual and official capacities; and
A. BELL, in his individual and official capacities;

        Defendants.

---

## MEMORANDUM OPINION REGARDING MOTIONS
## FOR SUMMARY JUDGMENT

---

Magistrate Judge Shaffer

        This Memorandum Opinion addresses the following motions:  (1) Defendants Cordova,

Nunez, Holloway, Topliss, Williams, Clinkinbeard, Espinoza, Bufmack, Benavidez, and Bell's

Motion for Summary Judgment Based on Plaintiff's Failure to Exhaust Prison Administrative

---

[1]From a view of the docket sheet, it appears that Ms. Hanson has never been successfully served with the summons and complaint in this action.  *See* doc. #48. She is dismissed from this action, without prejudice, pursuant to Fed. R. Civ. P. 4(m).

1

Remedies (doc. #117) (hereinafter the "Exhaustion Motion") and (2) Defendants Cordova, Holloway, Williams, Clinkinbeard, Espinoza and Benavidez's Motion for Summary Judgment (doc. #118) (hereinafter the "Excessive Force Motion"), which were both filed on November 12, 2015. Plaintiff William R. Stevenson filed his Response to Defendants' Exhaustion Motion (doc. #146) on March 3, 2016, which was followed by Defendants' Reply (doc. #152) on April 14, 2016. Mr. Stevenson filed his Response to Defendants' Excessive Force Motion (doc. #147) on March 3, 2016, and Defendants tendered their Reply (doc. #153) on April 18, 2016.

Also pending before the court are (3) Defendant Bell's Motion for Summary Judgment (doc. #119) and (4) Defendants Bufmack and Nunez's Motion for Summary Judgment (doc. #120), which were filed on November 12, 2015. After requesting and receiving multiple extensions of time to file his client's response briefs, *see* doc. #127, #128, #129, #130, #135 and #136, Mr. Stevenson's counsel moved on March 3, 2016 for Leave to File Out-Of-Time his Responses to Defendants' Four Outstanding Motions for Summary Judgment (doc. #145). In that motion, Plaintiff's counsel explained that health issues had prevented him from complying with previously set deadlines, and asked the court to accept the "four responses to Defendants' outstanding motions for summary judgment . . . filed contemporaneously with this motion." The docket indicates, however, that counsel did not include responses to the summary judgment motions filed by Defendants Bell, Bufmack and Nunez. That oversight was noted in Defendants' Response in Opposition to Plaintiff's Motion for Leave to File Out-Of-Time (doc. #148) submitted on March 14, 2016, but was met with silence from Mr. Stevenson's attorney. In an Order issued on March 17, 2016, this court granted Plaintiff's Motion for Leave (doc. #145) and accepted the two response briefs filed on March 3, 2016 (doc. #146 and #147). However, in

2

the same Order, the court indicated that no further response briefs from Mr. Stevenson would be accepted.

The parties consented (doc. #85, #86 and #88) to the magistrate judge's jurisdiction to "conduct all further proceedings in this civil action, including trial, and to order the entry of a final judgment," pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D.C.COLO.LCivR 72.2. Accordingly, the case was referred to this court on March 3, 2015.  After carefully considering the parties' briefs and attached exhibits, the entire case file, and the applicable law, this court decided the aforementioned motions and briefly explained the bases for its rulings during a hearing on September 29, 2016.  This Memorandum Opinion elaborates upon those rulings from the bench.

## PROCEDURAL BACKGROUND

Mr. Stevenson commenced this litigation on February 28, 2014 with the filing of a *pro se* Complaint,[2] pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983, that asserted constitutional violations by 15 staff members at the Colorado Territorial Correctional Facility in Canon City, Colorado.  Mr. Stevenson alleges in his Complaint that on February 29, 2012, Defendants Espinoza, Clinkinbeard, Hanson, Benavidez, and Sullivan subjected him to excessive force by:

> excessively tasing him five times in rapid succession; by applying handcuffs more tightly than necessary; by dropping him on his face from approximately 2-3 feet in the air after he was handcuffed, shackled and otherwise subdued; by then pressing his face hard into the floor grinding his teeth on the concrete; by intentionally bending his wrist and pulling his arms while handcuffed and strapped to a back board; and by ignoring his repeated and reasonable complaints about the cuffs being too tight and

---

[2]On March 11, 2015, counsel entered his appearance on behalf of Mr. Stevenson.

refusing his requests to loosen the same.[3]

*See* Complaint (doc. #1) at 10.  Mr. Stevenson further asserts that Defendants Holloway,

Williams, and Cordova were present during the use of excessive force but failed to intervene.  *Id.*

at 20.  Plaintiff insists that Defendants' use of force was unjustified because there was no

emergency situation and no threat to anyone's safety.  *Id.* at 19.

The Complaint also claims that Defendants Cordova, Holloway, and Clinkinbeard

conspired to cover up this Eighth Amendment violation by falsely initiating a prison disciplinary

action against Plaintiff for assault, and that Defendants Nunez, Bufmack, and Holloway refused

to accurately document the extent of his injuries.  On March 15, 2012, Defendant Cordova issued

Plaintiff an incident report for assault and for advocating and creating a facility disruption, which

purportedly contained several false allegations concerning Plaintiff's behavior during the use of

force incident.  Defendant Topliss, acting as a disciplinary hearing officer, found Plaintiff guilty

of the unsubstantiated charges.  Finally, Plaintiff alleges that Defendant Bell, Plaintiff's case

manager, and Defendant Wolfe, the facility's grievance coordinator, interfered with his efforts to

exhaust his administrative remedies.

On May 20, 2015, Magistrate Judge Boyd Boland entered an Order dismissing Defendant

Wolfe from this action and directing that the claims against Defendants Cordova, Nunez,

Holloway, Topliss, C. Williams, H. Williams, Clinkenbeard, Espinoza, Sullivan, Hanson, Soto,

Benavidez, and Bell be drawn to a presiding judge.

---

[3]Plaintiff insists that he suffered "scarring on his back from the taser, gashes and swelling to his wrists, pain in both wrists, shooting pain in his right hand, numbness and loss of feeling to his left thumb and fingers, feeling of electrical shock, decreased mobility in both wrists, as well as scarring from the handcuffs, "two chipped front teeth, lacerations to lower lip, neck strain," and "recurring nightmares of being shot in the back at close range."  *See* Complaint, at 10.

4

The Complaint, minus the dismissed defendants,[4] remains the operative pleading in this action and asserts two claims for relief.  The first claim alleges the "use of excessive force & deliberate indifference" in violation of the Eighth Amendment.  The second claim asserts a "conspiracy to violate civil rights under the Due Process Clause of the Fourteenth Amendment."

## ANALYSIS

"Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." *Montgomery v. Board of County Comm'rs*, 637 F. Supp. 2d 934, 939 (D. Colo. 2009) (internal quotation marks and citations omitted).

The burden of persuasion under Rule 56 requires the moving party to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact, given the relevant substantive law." *Thomas v. Wichita Coca-Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  A fact is "material" if under the substantive law it could have an effect on the outcome of the lawsuit. *Equal Emp't Opportunity Comm'n v. Horizon/CMS Healthcare Corp*., 220 F.3d 1184, 1190 (10th Cir. 2000) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).  While the moving party bears the initial burden of showing that there is an absence of any issues of material fact, *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir. 1991), the movant need not

---

[4]On October 15, 2015, Mr. Stevenson voluntarily dismissed his claims against Defendants Henry Williams and Jason Soto.  *See* doc. #133.

negate the non-movant's claim.  *See John Hancock Mut. Life Ins. Co. v. Weisman*, 27 F.3d 500, 503 (10th Cir. 1994); *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1529 (10th Cir. 1994).  Once the moving party points to an absence of evidence to support the non-moving party's claim, the non-moving party may not rest upon his pleadings, but must come forward with specific facts showing that there is a genuine issue for trial as to the elements essential to the non-moving party's case.  *See* Fed. R. Civ. P. 56(e).  *See also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

   To defeat a properly supported motion for summary judgment, there must be evidence upon which the jury could reasonably find for the plaintiff.  *See, e.g., Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'").  Conclusory allegations will not create a genuine issue of material fact necessitating trial.  *Dobson v. City & Cty. of Denver*, 81 F. Supp. 2d 1080, 1083 (D. Colo. 1999), *aff'd,* 13 F. App'x 842 (10th Cir. 2001).  *Cf. Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990), *rehearing denied* (Jan. 29, 1991) (acknowledging "conclusory allegations without specific supporting facts have no probative value").  Similarly, evidence that is not significantly probative and immaterial factual disputes will not defeat a motion for summary judgment.  *Ayon v. Gourley*, 47 F. Supp. 2d 1246, 1252 (D. Colo. 1998), *aff'd,* 185 F.3d 873 (10th Cir. 1999).  The demonstration of "some metaphysical doubt as to the material facts" is not sufficient to establish a genuine issue of material fact.  *Forman v. Richmond Police Dep't*, 104 F.3d 950, 957 (7th Cir. 1997) (quoting *Matsushita*, 475 U.S. at 957).  After construing the factual record and drawing all reasonable inferences therefrom in the light most favorable to the non-moving party,

*Kidd v. Taos Ski Valley, Inc.*, 88 F.3d 848, 851 (10th Cir. 1996), *rehearing denied* (Sep. 5, 1996), the court ultimately must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "The very purpose of a summary judgment action is to determine whether trial is necessary." *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).

Mr. Stevenson failed to respond to the summary judgment motions filed by Defendants Bell, Bufmack and Nunez. However, summary judgment may not be granted merely because the non-moving party failed to file a response. *See Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002). As the Tenth Circuit has explained, "summary judgment is 'appropriate' under Rule 56(e) only when the moving party has met its initial burden of production under Rule 56(c). If the evidence produced in support of the summary judgment motion does not meet this burden, 'summary judgment must be denied *even if no opposing evidentiary matter is presented*.'" *Id.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160-61 (1970)) (emphasis added). But, "by failing to file a response within the time specified . . . , the nonmoving party waives the right to respond or to controvert the facts asserted in the summary judgment motion." *Reed,* 312 F.3d at 1195.

A.      *Defendants' Exhaustion Motion*

Defendants Cordova, Nunez, Holloway, Topliss, Williams, Clinkinbeard, Espinoza, Bufmack, Benavidez, and Bell have moved for summary judgment on the ground that Mr. Stevenson failed to exhaust his administrative remedies under the Prison Litigation Reform Act of 1996 ("PLRA"). Defendants contend that Plaintiff failed to exhaust his administrative

remedies by not properly complying with Colorado Department of Corrections ("CDOC") Administrative Regulation 850-04 ("AR 850-04") and, more specifically, by providing multiple "Step 3" grievance forms, by failing to properly incorporate "all issues and remedies" in subsequent steps in the grievance process, and by exceeding mandated page limitations. According to Defendants, these procedural errors preclude a finding that Mr. Stevenson properly exhausted his administrative remedies.

Plaintiff Stevenson argues, to the contrary, that the record before the court reveals genuine issues of material facts as to:

> 1) whether Mr. Stevenson submitted grievances in conformity with applicable Administrative Regulations at all three stages of the grievance process; 2) whether the grievances Mr. Stevenson submitted were procedurally defective; [and] 3) whether officials' mishandling of Mr. Stevenson's grievances or officials' failure to comply with their own obligations under the AR of Mr. Stevenson's grievances made administrative remedies "unavailable" to Mr. Stevenson.

*See* Plaintiff's Response to Defendants' Exhaustion Motion, at 1.

A failure to exhaust administrative remedies constitutes an affirmative defense which must be pled and proved. *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007). Because Defendants have submitted evidence to support their exhaustion arguments, the burden shifts to Mr. Stevenson to show, by tendering competent evidence, that summary judgment is not proper. If he fails to demonstrate with specificity the existence of a disputed material fact, the affirmative defense bars his claim, and Defendants are entitled to summary judgment as a matter of law. *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997). In short, this court must determine whether Mr. Stevenson has come forward with specific facts to demonstrate a genuine issue of material facts on the issue of whether he properly complied with the PLRA's exhaustion

requirement.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The "PLRA's exhaustion requirement applies to all inmate suits about prison life."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  *See also Booth v. Churner*, 532 U.S. 731, 734, 741 (2001) (PLRA requires exhaustion in all matters regardless of remedy sought and availability of remedy at the agency level).  Even where the "available" remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available.  *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citing *Booth*, 532 U.S. at 740 (holding that even where an inmate sought money damages and the grievance process did not permit such awards, exhaustion was required as long as there was authority to take some responsive action)).

The PLRA's requirement that an inmate exhaust all available administrative remedies before initiating suit is mandatory.  *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.").  *See also Jones v. Bock*, 549 U.S. 199, 210-212 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").  "To exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient."  *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007).  The administrative review process that must be completed to properly comply with applicable grievance procedures is "not defined by the PLRA, but [rather] by the prison grievance process

itself." *Jones*, 549 U.S. at 218.

The CDOC has a grievance procedure available to inmates which entails a formal three-step written grievance procedure.  See Affidavit of Anthony DeCesaro (doc. #117-1) and AR 850-04 (doc. #117-2), both attached to Defendants' Exhaustion Motion.[5]  Administrative Regulation 850-04 requires an inmate to file a Step 1 grievance, a Step 2 grievance, and a Step 3 grievance.  *See* AR 850-04 Section IV.F.2 (doc. #117-2, at page 5 of 15).  The inmate must state in writing the "basis for the grievance and the relief requested in the space provided on the [grievance form].'"[6]  *See* AR 850-04 Section IV.C.1.b. (doc. #117-2, at page 3 of 15).

1.  Each grievance shall address only one problem or complaint and include a description of the relief requested.  Problems that arise from the same incident or set of facts shall be grieved in one grievance, even though it may involve multiple DOC employees, contract workers, or volunteers.

2.  A substantive issue or remedy may not be added at a later step if it has not been contained in each previous step of that particular grievance.  All issues and remedies contained in the original grievance must be incorporated into each subsequent step of the grievance.  Failure to renew each element of the complaint and/or requested relief in subsequent steps shall be deemed a waiver of those elements and/or requested remedy.

*See* AR 850-04 Section IV.D.1 and 2 (doc. #117-2, at page 4 of 15).

A Step 1 grievance must be filed no later than thirty calendar days after the date the prisoner knew, or should have known, of the facts giving rise to the grievance.  *See* AR 850-04

---

[5]A court may take judicial notice of agency rules and regulations. *Ray v. Aztec Well Serv. Co.*, 748 F.2d 888, 889 (10th Cir. 1984).  *See also Muniz v. Kaspar*, No. 07-cv-01914-MSK-MJW, 2008 WL 3539270, at *3 (D. Colo. Aug. 12, 2008) (taking "judicial notice of AR 850-04, the administrative regulation describing the grievance process").

[6]That same provision further states that "[a]dditional pages or attachments will not be considered, except at Step 3 where relevant exhibit(s) of three pages or less may be attached. . . . A continuation of the body of the grievance onto a separate page is not an exhibit and is not allowed."

Section IV.H.1.a (doc. #117-2, at page 6 of 15).  When an offender wishes to proceed to the next step in the process, the offender shall file the next step within five calendar days after receiving the response.  *See* AR 850-04 Section IV.H.1.c (doc. #117-2, at page 6 of 15).  In the event the time limit concerning any step of the process expires without a response, the offender may proceed to the next step within five calendar days of the date the response was due.  *See* AR 850-04 Section IV.H.1.d (doc. #117-2, at page 6 of 15).

A Step 3 grievance is the final step in the grievance process and the decision of the grievance officer on a Step 3 grievance constitutes final agency action.  *See* AR 850-04 Section IV.G.1.c.4 (doc. #117-2, at page 5 of 15).

> 1.     The grievance officer may deny the grievance substantively.
> When a grievance is denied after a review of the substantive issue,
> the grievance officer shall certify in the response that the offender
> has exhausted the grievance process.
>
> 2.     The grievance officer may deny the grievance on procedural grounds,
> without addressing the substantive issues, if the grievance is incomplete,
> inconsistent with a former step, illegible, requests relief that is not
> available, fails to request relief, or in any other way fails to comply with
> the provisions of this regulation.  When a grievance is denied for a
> procedural error, the grievance officer shall certify in the response that the
> offender has **not** exhausted the grievance process.

*See* AR 850-04 Section IV.G.1.c.1 and 2 (doc. #117-2, at page 5 of 15) (emphasis in original).

1.     <u>Undisputed Facts</u>

The record before the court discloses the following undisputed facts.  Mr. Stevenson filed a Step 1 grievance on March 27, 2012, 27 days after the alleged incident involving excessive force.  In his Step 1 grievance, Mr. Stevenson stated that he was "dog-piled by several officers," "tazed 5 times in rapid succession by Sgt. Espinoza and I believe by one other officer," and subjected to excessive force by being handcuffed too tightly, by having his arms pulled

11

forcefully, and by being dropped on his face while his hands were cuffed.  The Step 1 grievance

also asserted that Plaintiff had been subjected to unreasonable and excessive force in violation of

the Eighth Amendment and that the "following staff were present: Capt. Cordova, Lts. Holloway

and Williams, Sgts. Benevedes, Clinkbeard, Espinosa and Sullivan, and C/Os Hanson and

Moschetti."[7]  *See* Exhibit A-2 (doc. 117-3) attached to Defendants' Exhaustion Motion.

Plaintiff's Step 1 grievance was received on March 29, 2012.

The response to Mr. Stevenson's Step 1 grievance is dated May 11, 2012.[8]  That

response, apparently prepared by Donald Nunez, concluded that

> The findings of the Use of Force [Plaintiff] was involved in states the amount of
> force utilized in this incident was necessary, justified, and appropriate.  It was
> your actions Mr. Stevenson, which caused the staff to exercise a level of control
> needed to control and restrain you during the incident in which you were verbally
> abusive and physically resistive.  After reviewing all the documentation
> associated with this incident, I have determined your complaint to be without
> merit or creditability.

*See* Exhibit A-3 (doc. 117-4) attached to Defendants' Exhaustion Motion.

Mr. Stevenson submitted a Step 2 grievance on May 4, 2012, in which he noted that "[o]n

March 29, 2012, I submitted a staff conduct grievance to Case Manager Harding . . . regarding

the excessive use of force occurring on February 29, 2012. . . . It has been well over 30 days and

there has been no response."  Plaintiff, in his Step 2 grievance, specifically invoked AR 850-

---

[7]This Step 1 grievance does not mention Defendants Topliss, Bufmack, Bell, or Nunez,
and does not refer to any alleged conduct that occurred after February 29, 2012.

[8]According to AR 850-04, Mr. Stevenson should have "receive[d] a written response [to
his Step 1] grievance without 30 calendar days of its receipt by the case manager/CPO," which
would have been April 28, 2012.  *See* AR 850-04 Section IV.H.1.b (doc. #117-2, at page 6 of
15).  Because the Step 1 response was untimely, Mr. Stevenson was entitled to "proceed to the
next step within five calendar days of the date the response was due."  *See* AR 850-04 Section
IV.H.1.d (doc. #117-2, at page 6 of 15).

04.IV.D.2 and "renew[ed] and incorporate[d] all issues and remedies that were contained in the original grievance."  *See* Exhibit A-4 (doc. 117-5) attached to Defendants' Exhaustion Motion. This Step 2 grievance apparently was received by DOC personnel on May 7, 2012.

On May 18, 2012, Mr. Stevenson submitted an additional grievance form that he denominated for "information only."  In the narrative portion of the form, Plaintiff explained:

> Just for the record, the response to this [Step 1] grievance was late.  The grievance was submitted to Case Manager Harding on March 29, 2012 and was received by the grievance coordinator on April 5, 2012.  The [Step 1] grievance was not responded to until May 11, 2012, well over the 30 day limit.  There was no notice of delay.  As stated in my Step 2, since there was no timely response, as a matter of course pursuant to AR 850-04(h)(1)(d), the Step 2 was timely submitted to the next level, and pursuant to AR 850-04(D)(2), all issues and remedies that were contained in the original grievance were renewed and incorporated into the Step 2, which was submitted to Case Manager Bell on May 7, 2012.

*See* Exhibit A-6 (doc. 117-7) attached to Defendants' Exhaustion Motion.  Case Manager Bell apparently received the "information only" submission on May 21, 2012.[9]

The actual Step 2 grievance dated May 4, 2012 generated a response from Lance Miklich on June 1, 2012 which in turn was received by Mr. Stevenson on June 18, 2012.  Mr. Miklich concluded that Plaintiff's "claims of excessive force was not founded through the review process . . . . [and] I have found no evidence to support your allegations. . . . Your choices and actions resulted in events occurring to ensure the safety of employees and your self."  *See* Exhibit A-5 (doc. 117-6) attached to Defendants' Exhaustion Motion.

Plaintiff submitted a Step 3 grievance form on June 14, 2012, in which he wrote "[i]t has

---

[9]Plaintiff contends that Case Manager Bell was the one who mis-characterized the May 18, 2012 "informational" submission as a Step 2 grievance. *See* Exhibit 1 (doc. #147-1, the Stevenson Declaration, at ¶ 121), attached to Plaintiff's Response to Defendants' Excessive Force Motion.

been over 30 days since your receipt of my Step 2 Grievance regarding the use of excessive force and no reply has been received and no notice of delay." Mr. Stevenson stated that "all issues and remedies that were contained in the original Grievance are renewed and incorporated herein." He also stated that "since I have the burden of proof, I submit the attached affidavit in support of my allegations" and asked the grievance officer to also "[s]ee both Clinical Services Anatimical (sic) Forms, dated 2/29/12 (2 pages) and 3/7/12 (1 page), and Conduct Complaint (Form 300-16 RDD, dated 3/14/12 and submitted to Mrs. Mary Ann Aldrich on 3/13/12, incorporated herein."[10] *See* Exhibit A-7 (doc. 117-8) attached to Defendants' Exhaustion Motion. The Step 3 grievance bears the signature "A Bell" but has the printed name "S. Cadwallader." The box bearing the legend "Date received" is blank.

On June 21, 2012, Grievance Officer Anthony DeCesaro responded to Mr. Stevenson's Step 3 grievance and concluded that Plaintiff had not exhausted his administrative remedies "in this matter based upon your failure to satisfactorily request allowable relief." According to Mr. DeCesaro,

> The grievance procedure is outlined in Administrative Regulation 850-04, it states in pertinent part that, "**All issues and remedies contained in the original grievance must be incorporated into each subsequent step of the grievance. Failure to renew each element of the complaint and/or requested relief in subsequent steps shall be deemed a waiver of those elements and/or requested relief.**" You have failed to follow the grievance procedure by not renewing your complaint and your remedy in the Step 3 grievance as required; therefore this grievance is procedurally denied. The time constraints outlined in AR #850-04 are now expired regarding these events, so there will be no further review of this matter.

---

[10]Although Mr. Stevenson referred to these extraneous materials in his Step 3 grievance, he insists they were not "attached" to the grievance in violation of AR 850-04. *See* Exhibit 1 (doc. #147-1, the Stevenson Declaration, at ¶ 122), attached to Plaintiff's Response to Defendants' Excessive Force Motion.

*See* Exhibit A-8 (doc. 117-9) attached to Defendants' Exhaustion Motion (emphasis in original).

On June 26, 2012, Mr. Stevenson responded to Grievance Officer DeCesaro's June 21, 2012 memorandum. In a lengthy recitation of the procedural history surrounding his grievance, Plaintiff explained

> You state that you have received my Step 3 grievance. What you have reviewed and responded to was not my Step 3 grievance, but only an "informational" which I submitted **after** receiving the late Step 2, in which I explained and clarified that the Step 1 was late and that I had proceeded to the next Step.
>
> My Step 3 was submitted to Case Manager Bell on June 15, 2012 after there had been no timely response to the Step 2. And the Step 3 did indeed renew and incorporate all issues and remedies that were contained in the original Step 1 (as all my grievances do), and was accompanied by my sworn affidavit which was notarized by Case Manager Jordon, and I incorporated by reference the two Clinical Service Anatomical forms (dated 2/29/12 and 3/7/12 respectively) and the Conduct Complaint form (300-16 RDD) dated 3/14/12.
>
> The computer shows that you did not receive my Step 2 grievance until 6/19/12. Further you state that you have received my Step 3, yet you attach not the Step 3, but the "informational" I submitted to Case Manager Bell on May 21, 2012. You also state that failure to renew each element of the complaint and/or request relief in subsequent steps shall be deemed a waiver of those elements and/or requested remedy. Based on this statement, it is apparent that you are **not** responding to my Step 3 grievance, because in my Step 3 grievance, I specifically stated, "Pursuant to AR 850-04 (D)(2), all issues and remedies that were contained in the original grievance are renewed and incorporated herein."

*See* Exhibit A-9 (doc. 117-10) attached to Defendants' Exhaustion Motion (emphasis in original).

Mr. DeCesaro responded to Mr. Stevenson on July 26, 2012. Mr. DeCesaro declined Plaintiff's request to reconsider his earlier declination. According to Mr. DeCesaro,

> There are three steps to the grievance process. Per AR-850-04 D.2. ***All issues and remedies contained in the original grievance must be incorporated into each subsequent step of the grievance.*** You did not do that. Furthermore, I have yet to receive a step 3 from you. I did receive two step 2s, one labeled as information only. It was processed as a Step 3. There is no such think as an

"Information Only" step in the grievance process.

I will not reconsider the Step 3 grievance response as I have no authority to do (sic) under Administrative Regulation 850-04.  The decision of the Step 3 Grievance Officer is the final decision in this matter and there are no appeals from that decision.  I cannot reopen any grievance.

If there were missing evidence or inaccurate information presented, those matters should have been cured, prior to the Step 3 filing.

*See* Exhibit A-10 (doc. 117-11) attached to Defendants' Exhaustion Motion (emphasis in

original).

In another letter dated September 25, 2012, Mr. DeCesaro responded to further

communications from Mr. Stevenson.

I have reviewed your Step 3 response and again find it is not in compliance with AR 850-04.  As stated in the AR, ***"all issues and remedies contained in the original grievance must be incorporated into each subsequent step of the grievance.  Failure to renew each element of the complaint and/or requested relief in subsequent steps shall be deemed a waiver of those elements and/or requested remedy."*** You failed to comply with this in your Step 3.

Additionally, the attached affidavit is not in compliance with AR 850-04.  As stated in the AR, ***"the grievance shall clearly state the basis for the grievance and the relief requested in the space provided on the form.  Additional pages or attachments shall not be considered, except at Step 3 where relevant exhibit(s) of three pages or less may be attached."*** You attempted to continue your grievance dialogue through the additional pages (affidavit) which you attached.  An exhibit is not the continuation of the body of your grievance it is a separate attachment that lends support to your claim.  I did not consider your additional dialogue because the grievance is to be drafted in the space provided, which you clearly failed to do.

Furthermore, the AR does not contain any provision for the filing of informational grievances.  Please follow the procedure in AR 850-04.

*See* Exhibit A-12 (doc. 117-13) attached to Defendants' Exhaustion Motion (emphasis in

original).

2.      <u>Exhaustion as to Defendants Bell, Bufmack, Nunez and Toplis, and Plaintiff's</u>

16

<u>Fourteenth Amendment Claims Against All Defendants</u>

As noted above, "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules, – rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (internal quotation marks and citation omitted).  *Cf. Fields*, 511 F.3d at 1112 ("To exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient." ).

It cannot be disputed that Plaintiff's grievances make absolutely no mention of Defendants Bell, Bufmack, Topliss or Nunez.  It is also clear that Mr. Stevenson's grievances make no mention of any alleged misconduct that occurred after February 29, 2012, and do not allege a conspiracy on the part of any named defendant.  In their Exhaustion Motion, Defendants contend that Mr. Stevenson failed to properly file grievances against Defendants Bell, Bufmack, Clinkinbeard, Cordova, Holloway, Nunez, and Topliss based upon alleged violations of the Eighth and Fourteenth Amendments (conspiracy and retaliation). Therefore, this court must determine whether Mr. Stevenson has come forward with specific facts to demonstrate a genuine issue of material facts on the issue of whether he properly complied with the PLRA's exhaustion requirement.

Mr. Stevenson concedes that the conspiracy and retaliation claims against Defendants Bell, Bufmack, Clinkinbeard, Cordova, Holloway, Nunez and Topliss, as well as the claim alleging misconduct on the part of Nurse Bufmack, were never "the subject of separate grievances and therefore not raised at the administrative level."  *See* Plaintiff's Response (doc. #146), at 17.  Plaintiff, however, argues that his procedural shortcoming should not bar those

substantive claims because:  (1) AR 850-04 does not require him to specify subject officers by name; (2) "the conspiracy and retaliation claims are legal theories not subject to exhaustion under the PLRA;" and (3) "proper handling of the grievances would have exposed the misconduct by defendants of which Mr. Stevenson now complains." *Id.* at 18.  None of these arguments are availing.

The PLRA's "exhaustion requirement is designed to afford [ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) ("a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought") (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002), *overruled in part on other grounds* by *Bell Atl. v. Twombly*, 550 U.S. 544, 563 (2007).  *Cf. Soto v. Warden of Salinas Valley State Prison*, No. 15-02024 BLF (PR), 2016 WL 3661384, at *6 (N.D. Cal. Jul. 1, 2016) (plaintiff failed to exhaust his administrative remedies where his grievances, even when construed liberally, did not discuss or mention any claim of conspiracy or make any allegation of a cover-up related to plaintiff's excessive force claim); *Burt v. Berner*, No. 13-CV-794-NJR-DGW, 2015 WL 1740044, at *6 (S.D. Ill. Apr. 14, 2015) (in holding that the plaintiff failed to exhaust his conspiracy claim, the court noted that the prisoner's grievance "needed to alert prison officials to the 'nature of the wrong'" and that the plaintiff's grievance did "nothing to induce the reader to consider that the denial of medical care was perhaps the result of a premeditated, multi-institution plan involving both correctional officers and medical staff").  To that same end, AR 850-04 requires that the inmate "clearly state the basis for the grievance."  *See* AR 850-04 (doc. #117-2), at IV.C.1.b.  Moreover, "[a] substantive issue or remedy may not be added at a later step if it has not been contained in each

previous step of that particular grievance." *Id.* at IV.D.2.  Although an inmate's grievance

should not be held to a standard of perfect clarity, it cannot be "so vague as to preclude prison

officials from taking appropriate measures to resolve the complaint internally." *Kikamura v.*

*Osagie*, 461 F.3d 1269, 1283 (10th Cir. 2006) (internal quotation marks and citation omitted),

*overruled in part on other grounds* by *Twombly*, 550 U.S. at 563.

A careful reading of Mr. Stevenson's Step 1 grievance, dated March 27, 2012, makes

clear that the "subject of the grievance" was "staff conduct - excessive force."  *See* Exhibit A-2

(doc. #117-3) attached to Defendants' Motion for Summary Judgment.  In his narrative

statement, Mr. Stevenson alleged that he was "dog-piled by several officers," "was tased 5 times

in rapid succession by Sgt. Espinoza," that "cuffs were put on so tight they cut deep into my

skin, touched bone and cut off circulation," that an unidentified officer pulled his arms and put

pressure on Plaintiff's wrists to inflict additional pain, and that he was picked up and then

dropped on his face, thereby "injuring his face and chipping [a] tooth."  Plaintiff alleges that

correctional officers refused to loosen his handcuffs after he was brought to the medical unit.

The Step 1 grievance asserts that "[t]he following staff were present" during the incident on

February 29, 2012: "Capt. Cordova, Lts Holloway and Williams, Sgts Benevides, Clinkinbeard,

Espinoza and Sullivan, and C/O's Hanson and Moschetti."

Mr. Stevenson's March 27, 2012 grievance does not allege that he was the victim of

retaliation or assert that the named individuals conspired to violate his Eighth Amendment right

against cruel and unusual punishment.  *Cf. Cleveland v. Harvanek*, 607 F. App'x 770, 773 (10th

Cir. 2015) (holding that the inmate-plaintiff's claims for retaliation and conspiracy were

unexhausted because the plaintiff never filed an administrative grievance alleging retaliation or

conspiracy); *Lowery v. Edmondson*, 528 F. App'x 789, 793 (10th Cir. 2013) (holding that

plaintiff's request for discovery related to an alleged conspiracy was properly denied; because

plaintiff failed to allege a conspiracy in his administrative grievance, that conspiracy claim was

unexhausted); *Carr v. Brill*, 187 F. App'x 902, 905 (10th Cir. 2006) (holding that because the

prisoner had not used the grievance system to report his claim of alleged retaliation, "he did not

exhaust his available administrative remedies with respect to this claim"); *Martin v. Butler*, 10 F.

App'x 773, 774 (10th Cir. 2001) (holding that the state prisoner plaintiff had a duty to exhaust

his administrative remedies before filing his conspiracy claim).  *Cf. Hemphill v. Jones*, No. CIV-

11-1192-HE, 2012 WL 7059643, at *4 (W.D. Okl. Oct. 31, 2012) (holding that plaintiff's claims

for retaliation and conspiracy should be dismissed for failure to exhaust administrative remedies

after observing that the plaintiff's properly exhausted grievances did not include any allegations

of retaliation or conspiracy).  Plaintiff's Step 1 grievance does not contain any reference to Nurse

Bufmack, Captain Nunez, Lieutenant Topliss, Case Manager Bell, or a "cover-up" of the alleged

excessive force that occurred on February 29, 2012.

  Alternatively, the claim against Defendant Topliss must be dismissed based upon

Plaintiff's failure to exhaust administrative remedies.  As the court explained in *Gatlin v.*

*Holdridge*, No. 11-cv-03004-WJM-KLM, 2012 WL 6874397, at *8 (D. Colo. Nov. 21, 2012),

*aff'd in relevant part and rejected in part on other issue*, 2013 WL 179110 (D. Colo. Jan. 17,

2013), Rule 106(a)(4) of the Colorado Rules of Civil Procedure provides relief "[w]here any

governmental body or officer or any lower judicial body exercising judicial or quasi-judicial

functions has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and

adequate remedy otherwise provided by law."

> The Colorado Supreme Court has held that disciplinary actions taken by CDOC personnel against inmates under the COPD are quasi-judicial actions that are reviewable pursuant to Colo. R. Civ. P. 106(a)(4). . . . Plaintiff has neither alleged in his filings nor provided ancillary evidence that he exhausted his state court remedies by obtaining judicial review of the [pertinent] COPD hearings and decisions[.]"

*Id.* Mr. Stevenson's claim against Defendant Topliss for alleged procedural irregularities in the COPD hearing against him suffers from the same absence of proof.

In sum, Mr. Stevenson has failed to sustain his burden of demonstrating a genuine issue of material fact as to whether he properly exhausted administrative remedies. *Cf. Frazier v. Miller*, No. 14-cv-02766-CMA-MJW, 2015 WL 3466831, at *2 (D. Colo. May 29, 2015), *appeal dismissed,* 622 F. App'x 778 (10th Cir. 2015) (holding that plaintiff's claims were properly dismissed based upon his failure to fully exhaust his administrative remedies in compliance with AR 850-04). The court will therefore grant Defendants' Exhaustion Motion (doc. #117), in part, and all claims against Defendants Nunez, Topliss, Bell and Bufmack are dismissed without prejudice. The court will also dismiss without prejudice Plaintiff's second claim for relief as to all defendants.

   3.   Exhaustion as to Plaintiff's Eighth Amendment Claim Against Defendants Cordova, Holloway, Williams, Clinkenbeard, Espinoza, Sullivan and Benavidez

As noted, proper exhaustion of administrative remedies under the PLRA requires compliance with all steps of that administrative process, including "deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90. *Cf. Mower v. Swyhart*, 545 F.2d 103, 104 (10th Cir. 1976) ("Where [an] administrative remedy is clearly available, it would be totally inappropriate for [a] court to interfere in the internal administration of [a] prison.").

Here, Defendants Cordova, Holloway, Williams, Clinkenbeard, Espinoza, Sullivan, and

Benavidez contend that Mr. Stevenson failed to properly exhaust his excessive force claim to the extent he submitted more than three grievance forms, by failing to incorporate his issues and proposed remedies in each of his grievance forms, and by referencing or incorporating more than three pages of exhibits in one of his Step 3 grievance forms, all in violation of AR 850-04. *See* Defendants' Exhaustion Motion (doc. #117), at ¶¶ 48 and 49, and Defendants' Reply in Support of their Motion (doc. #152), at ¶ 2(a).   Mr. Stevenson responds that he did not deviate from the procedural requirements set forth in AR 850-04 and, at the very least, there are genuine issues of material fact that preclude summary judgment on this issue.

While Tenth Circuit and Supreme Court precedent clearly require an inmate to comply with available administrative remedies, an administrative remedy may be unavailable where prison authorities prevent or frustrate the prisoner's efforts to comply with the applicable grievance procedure. *See, e.g., Tuckel v. Grover*, 660 F.3d 1249, 1252-53 (10th Cir. 2011) ("when a prison official inhibits an inmate from utilizing an administrative process through threats or intimidation, that process can no longer be said to be 'available'"); *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) ("[D]istrict courts are obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials before dismissing a claim for failure to exhaust," internal quotation marks omitted). *Cf. Evans v. City of Belleville*, No. 3:14-cv-01417-SMY-PMF, 2015 WL 9686883, at *1-2 (S.D. Ill. Oct. 8, 2015), *rec. adopted*, 2016 WL 106597 (S.D. Ill. Jan. 11, 2016) (noting that while "strict compliance" with grievance procedures is mandatory, "the prison or jail administration cannot take unfair advantage of the grievance process;" "[t]he exhaustion requirement is not intended to be a procedural trap for the unsophisticated prisoner litigant").

22

In addressing the exhaustion arguments directed at Plaintiff's excessive force claim, I find instructive the discussion in *Muniz v. Kaspar*, No. 07-cv-01914-MSK-MJW, 2008 WL 3539270 (D. Colo. Aug. 12, 2008). In that case, the district judge held that at all phases of the grievance process under AR 850-04, "the Plaintiff's grievance was timely and presented . . . with sufficient specificity to enable CDOC to investigate, gather evidence, and prepare a meaningful response." *Id.* at *5. The court, however, also found that the "procedural trap" created by grievance officials and their "capricious" denial of the plaintiff's Step 2 effectively foreclosed the inmate's use of the grievance procedure as a meaningful way to seek internal resolution of his complaint. *Id.* I have the same concerns regarding the disposition of Mr. Stevenson's grievance.

Defendants first argue that the excessive force claim must be dismissed because Mr. Stevenson filed more than the permitted three grievances. It is undisputed that Mr. Stevenson filed his Step 1 grievance on March 27, 2012, that he filed what he denominated as his Step 2 grievance on May 4, 2012, and that he filed his designated Step 3 grievance on June 14, 2012. I understand that AR 850-04 does not contemplate the filing of an "information only" grievance and therefore Mr. DeCesaro deemed Plaintiff's May 18, 2012 "information only" submission to be a Step 3 grievance. Grievance Officer DeCesaro then concluded that the May 18, 2012 submission was ineffective as a Step 3 grievance because it did not incorporate all the issues and remedies advanced in Mr. Stevenson's original grievance. According to Mr. DeCesaro, Plaintiff "failed to follow the grievance procedure by not renewing your complaint and your remedy in the Step 3 grievance as required."

Mr. DeCesaro's actions are called into question by other information in the record. Mr.

Stevenson has asserted that he did not consider his "information only" submission to be a second Step 2 grievance and insists that erroneous designation was made by his case manager.  It appears that Mr. Bell received Plaintiff's Step 2 grievance dated May 4, 2012, as well as the "information only" submission on May 18, 2012.  A plain reading of AR 850-04 makes clear that Mr. Stevenson could not file a Step 3 grievance until the earlier of either 5 calendar days after actually receiving a response to his Step 2 grievance or five calendar days after the date the response to his Step 2 grievance was due.  *See* AR 850-04 Section IV.H.1 (doc. #117-2, at page 6 of 15).  Even if the "information only" submission could have been considered a Step 3 grievance, it was filed prematurely.  If he had received prompt notice of that improper classification and incomplete submission, perhaps Mr. Stevenson could have taken further action in a timely manner.

More to the point, AR 850-04 provides that Step 1, Step 2 and Step grievances must be filed with the prisoner's case manager, and "[g]rievances not properly submitted . . . shall be returned to the offender for proper submission at the facility."  *See* AR 850-04 Section IV.F.2 (doc. #117-2, at page 5 of 15).  The same Administrative Regulation states that "offenders filing grievances that are procedurally deficient may be asked to cure any deficiencies and resubmit for processing; however, if the offender refuses to make required changes, it should be accepted, scanned, and automatically assigned a grievance number and denied on procedural grounds." *See* AR 850-04 Section IV.B.1 (doc. #117-2, at page 3 of 15).  It is not unreasonable to expect that Mr. Bell would have understood that Mr. Stevenson could not file two Step 2 grievances (within the space of two weeks) regarding the February 29, 2012 incident and could not file a Step 3 grievance prematurely.  On this record, there is a disputed issue of fact as to who

24

designated the May 18 submission as a "Step 2" grievance and why Mr. Bell did not elect to return that submission to Mr. Stevenson as improperly filed.

Having unilaterally decided that Mr. Stevenson's "information only" submission should be treated as a Step 3 grievance, Mr. DeCesaro found it was procedurally deficient because it did not incorporate or renew all the issues and remedies contained in Plaintiff's Step 1 grievance. Notably, AR 850-04 simply says that issues and remedies "must be incorporated into each subsequent step of the grievance." *See* AR 850-04 Section IV.D.2 (doc. #117-2, at page 4 of 15). Yet, the May 18, 2012 submission specifically stated that "all issues and remedies that were contained in the original grievance were renewed in the Step 2, which was submitted to Case Manager Bell on May 7, 2012." That Step 2 grievance specifically stated that "pursuant to AR 850-04(D)(2), I hereby renew and incorporate all issues and remedies that were contained in the original grievance." Notably, Plaintiff's practice of "incorporation by reference" was not cited as a procedural deficiency in the Step 2 response prepared by Lance Miklich and dated June 1, 2012. To the contrary, Mr. Miklich apparently fully comprehended the nature of Plaintiff's allegations, assessed the merits of that claim and the requested relief, and concluded that Mr. Stevenson's complaint was "without merit or creditability." *Cf. Kikamura*, 461 F.3d at 1283 ("a grievance will satisfy the exhaustion requirement so long as it is not 'so vague as to preclude prison officials from taking appropriate measures to resolve the complaint internally'").

Finally, Defendants assert that Mr. Stevenson's Step 3 grievance was procedurally deficient because he referenced or incorporated more than three pages of exhibits in one of his Step 3 grievance forms. Notably, AR 850-04 permits an inmate to attach "relevant exhibit(s) of three pages or less" to a Step 3 grievance, but then states that "[a]dditional pages or attachments

*will not be considered*." *See* AR 850-04 Section IV.C.1.b (doc. #117-2, at page 3 of 15)

(emphasis added).  Although Mr. DeCesaro certainly was permitted to disregard any "pages or

attachments" in excess of three pages, this court could not find any provision in AR 850-04 that

explicitly states that excessive attachments, without more, provides an independent basis for

denying a Step 3 grievance.  More to the point, it appears that Mr. Stevenson was never afforded

an opportunity to cure this alleged procedural deficiency and resubmit his Step 3 grievance for

processing, as seemly contemplated by AR 850-04.  On balance, I find there are genuine issues

of material facts as to whether prison authorities prevented or frustrated Mr. Stevenson's efforts

to comply with the applicable grievance procedures under AR 850-04.  On that basis, I cannot

grant that portion of Defendants' Exhaustion Motion.  The court will proceed to the merits of

Plaintiff's Eighth Amendment claim against Defendants Cordova, Holloway, Williams,

Clinkenbeard, Espinoza, Sullivan, Hanson, and Benavidez.


B.      *Defendants' Excessive Force Motion*

        In moving for summary judgment on Mr. Stevenson's first claim for relief, Defendants

Cordova, Holloway, Williams, Clinkinbeard, Espinoza, and Benavidez assert that "no genuine

issue of material fact exists," and they are entitled to qualified immunity as their "conduct did

not violate Plaintiff's Eighth Amendment rights because Plaintiff cannot prove that Defendants'

actions were malicious or sadistic," and because "Defendants' actions were consistent with the

legitimate purpose of maintaining and restoring order and protecting institutional security." *See*

Defendants' Excessive Force Motion (doc. #118), at ¶ 3.  Plaintiff argues, to the contrary, that he

was subjected to "unjustified malicious and brutal acts" on the part of Defendants and that "[t]he

complete record before the Court is sufficient to create a genuine issue of material fact

concerning [his] excessive use of force claims." *See* Plaintiff's Response (doc. #147), at 3. Mr. Stevenson further contends that Defendants are not entitled to qualified immunity because their actions violated the Eighth Amendment prohibition on the use of excessive force, and "the constitutional right the Defendants violated was clearly established at the time of the conduct at issue." *Id.* at 40.

"[Q]ualified immunity is an affirmative defense to a section 1983 action." *Adkins v. Rodriguez*, 59 F.3d 1034, 1036 (10th Cir. 1995). "The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Toevs v. Reid*, 685 F.3d 903, 909 (10th Cir. 2012) (internal quotation marks and citations omitted). Whether a defendant is entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

"When the defense of qualified immunity is raised in a summary judgment motion, we apply special rules to determine whether the motion was properly granted or denied." *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004) (internal quotation marks and citation omitted). *See also Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1312 (10th Cir. 2009) (the court's review of summary judgment "in the qualified immunity context differs from that applicable to review of other summary judgment decisions."). "After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff," who must meet a two-part test before the defendant will bear the traditional burden of a movant for summary judgment under Fed. R. Civ. P. 56(c). *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001) (internal quotation marks and citation omitted).

> Specifically, [t]he plaintiff initially bears a heavy two-part burden [and] must show (1) that the defendant's actions violated a constitutional . . . right, and (2) that the right allegedly violated [was] clearly established at the time of the conduct at issue.  Unless the plaintiff carries [his] twofold burden, the defendant prevails.

*Reynolds*, 370 F.3d at 1030 (internal quotation marks and citations omitted).  "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment – showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law."  *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008) (internal quotation marks omitted).  *See also Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) ("Qualified immunity is applicable unless the plaintiff can satisfy both prongs of the inquiry") (internal quotation marks and citation omitted).  "A reviewing court may exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id.*

1       Whether Plaintiff's Eighth Amendment Right Was Clearly Established

For purposes of the qualified immunity doctrine, "[t]he clearly established inquiry examines whether the contours of the constitutional right were so well-settled, in the particular circumstances presented, that every reasonable . . . official would have understood that what he is doing violates that right."  *Lane v. Yohn*, No. 12-cv-02183-MSK-MEH, 2013 WL 4781617, at * 3 (D. Colo. Sept. 6, 2013), *appeal dismissed* (10th Cir. Oct. 31, 2013) (internal quotation marks and citation omitted).  "[T]he salient question . . . is whether the state of the law at the time of [the] incident provided 'fair warning'" to Defendants that their alleged conduct was unconstitutional.  *Tolan v. Cotton,* __ U.S. __, 134 S. Ct. 1861, 1866 (2014) (quoting *Hope v.*

*Pelzer*, 536 U.S. 730, 741 (2002)).

"To satisfy this prong, the burden is on the plaintiff to point to Supreme Court or Tenth

Circuit precedent (or the clear weight of other circuit courts) that recognizes an actionable

constitutional violation in the circumstances presented." *Lane,* 2013 WL 4781617, at *3.  "It is

not necessary for the plaintiff to adduce a case with identical facts, but the plaintiff must identify

some authority that considers the issue not as a broad general proposition, but in a particularized

sense . . . ." *Id.* (internal quotation marks and citation omitted).  There must be "a substantial

correspondence between the conduct in question and prior law allegedly establishing that the

defendant's actions were clearly prohibited." *Duncan v. Gunter*, 15 F.3d 989, 992 (10th Cir.

1994) (internal quotation marks and citations omitted).

The Supreme Court has long-recognized that the unnecessary infliction of pain on an

inmate by a correctional officer violates the Eighth Amendment.  *Cf. Escobar v. Reid*, 668 F.

Supp. 2d 1260, 1295 (D. Colo. 2009) (finding that Supreme Court and Tenth Circuit case law

"clearly established" that "prison officials' malicious application of force, which is more than *de*

*minimis*, and that prison officials' failure to prevent such harm when there is an opportunity to

do so, violates the Eighth Amendment"); *Green v. Johnson*, No. 12-cv-03158-DDC-KGS, 2015

WL 1440721, at *5 (D. Kan. Mar. 30, 2015) (noting that "the Supreme Court recognize[s] that

'[t]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment

forbidden by the Eighth Amendment" and concluded "as a matter of law" that "given this clearly

established right, no prison official reasonably could believe that the unnecessary infliction of

pain upon inmates . . . constitutes permissible conduct").

    2.     <u>Whether Plaintiff Has Alleged An Eighth Amendment Violation</u>

"The use of excessive force by jail officials violates a prisoner's rights under the Eighth Amendment's Cruel and Unusual Punishments Clause when the prisoner is subjected to an 'unnecessary and wanton infliction of pain.'" *Miller v. Glanz*, 948 F.2d 1562, 1566 (10th Cir. 1991) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (constitutional inquiry is directed at whether the prisoner was subjected to an "unnecessary and wanton infliction of pain"). The court's inquiry must focus on whether force was applied in a good faith effort to maintain or restore discipline, *see, e.g., Mitchell-Pennington v. McGovern*, No. 09-3106-SAC, 2009 WL 1938979, at *3 (D. Kan. Jul. 6, 2009) or "whether the force applied was excessive under the circumstances, or malicious and sadistic." *Merritt v. Hawk*, 153 F. Supp. 2d 1216, 1224 (D. Colo. 2001). *Cf. Marshall v. Milyard*, 415 F. App'x 850, 852 (10th Cir. 2011) (observing that "[a]n action by a prison guard may be malevolent yet not amount to cruel and unusual punishment"); *Pena v. Greffet*, 108 F. Supp. 3d 1030, 1033 (D. N.M. 2015) ("The Eighth Amendment does not require officers to use the minimum force necessary or even reasonably proportional force, but, rather, it requires only that they refrain from 'malicious and sadistic' violence, and that they direct their efforts to achieving a sincere penological end.") (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The court's Eighth Amendment analysis must take into consideration the highly-charged prison environment. *See Sampley v. Ruettgers*, 704 F.2d 491, 496 (10th Cir. 1983) (recognizing that in maintaining control of inmates, a prison guard often is called upon to "make instantaneous, on-the-spot decisions concerning the need to apply force without having to second-guess himself").[11]

-----

[11]The Supreme Court has acknowledged that corrections personnel are entitled to "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline." While trial courts and juries should not

"Ordinarily, an excessive force claim involves two prongs: (1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials act[ed] with a sufficiently culpable state of mind." *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003) (internal quotation marks and citation omitted). *Cf. Snyder v. Spilde*, 15-cv-02169-GPG, 2016 WL 1059612, at *2 (D. Colo. Mar. 17, 2016).

The first prong of the excessive force analysis "is contextual and responsive to contemporary standards of decency." *Whitington v. Sokol*, No. 06-cv-01245-PAB-CBS, 2009 WL 2588762, at *8 (D. Colo. Aug. 18, 2009) (quoting *Hudson*, 503 U.S. at 6-7). The law recognizes that a prison guard's use of force against a prisoner does not always constitute a constitutional violation. *Sampley*, 704 F.2d at 494. Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9 (citation omitted). *See also DeWalt v. Carter*, 224 F.3d 607, 620 (7th Cir. 2000) (a "simple act of shoving [plaintiff] qualifies as the kind of de minimis use of force that does not constitute cruel and unusual punishment" and "fall[s] short of what is required to state a claim for excessive force under the Eighth Amendment"); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (allegations that plaintiff "was bumped, grabbed, elbowed, and pushed" were not sufficient to "approach an Eighth Amendment claim"). *Cf. Hudson*, 503 U.S. at 9-10 (holding that the Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, "provided that the use of force is not of a sort repugnant to the

--------

"freely substitute their judgment for that of officials who have made a considered choice," actions taken by correctional staff in bad faith and for no legitimate purpose are not insulated from judicial review. *See Whitley v. Albers*, 475 U.S. 312, 322 (1986).

conscience of mankind") (internal quotes and citation omitted).

It is also axiomatic that a plaintiff is not required to sustain either serious or significant injuries to satisfy the objective component of an Eighth Amendment excessive force claim. *See Hudson*, 503 U.S. at 9. *Cf. Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992) (holding that significant physical injury is not required for an Eighth Amendment excessive force claim because the constitutional inquiry is on whether the infliction of pain was unnecessary and wanton). As the Supreme Court explained in *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010), "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Cf. United States v. LaVallee*, 439 F.3d 670, 688 (10th Cir. 2006) (the "Eighth Amendment . . protects against cruel and unusual force, not merely cruel and unusual force that results in sufficient injury").

> This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." The extent of injury may also provide some indication of the amount of force applied.

*Wilkins*, 559 U.S. at 37 (internal citations omitted).

The second, subjective, element of the excessive force analysis asks whether the defendant had a sufficiently culpable mind. Stated differently, this element focuses "on whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." *Webb v. Sterling Correctional Officer Delaney*, No. 14-cv-1461-RBJ-CBS, 2016 WL 931218, at *3 (D. Colo. Mar. 11, 2016) (citing

*Smith*, 339 F.3d at 1212). *Cf. Whitington*, 2009 WL 2588762, at *8 ("Whether pain is wantonly

and unnecessarily inflicted depends, at least in part, on whether force could have plausibly been

thought to be necessary to maintain order in the institution and to maintain the safety of the

prison personnel or inmates.") (quoting *Hickey v. Reeder*, 12 F.3d 754, 758 (8th Cir. 1993). *See*

*also Serna v. Colo. Dep't of Correction*, 455 F.3d 1146, 1152 (10th Cir. 2006) (noting that the

court "can infer malicious, sadistic intent from . . . conduct itself where 'there can be no

legitimate purpose' for the officers' conduct").

      In deciding whether the use of force was necessary or wanton, a court must consider "the

need for application of force, the relationship between that need and the amount of force used,

the threat reasonably perceived by the responsible officials, and any efforts made to temper the

severity of a forceful response." *Jackson v. Austin*, 241 F. Supp. 2d 1313, 1318 (D. Kan. 2003)

(citation omitted).

      a.    <u>Undisputed Facts</u>

      Consistent with the standard of review imposed under Rule 56, the court starts its

analysis by identifying those material facts that are not in dispute.  The following findings are

drawn from the parties' briefs and attached exhibits, as well as the court's review of video and

audio recordings from February 29, 2012 captured by a camera in the Upper Vestibule of Cell

House 1 at the Colorado Territorial Correctional Facility ("CTCF") and a body camera worn by

Correctional Officer Jerod Robles.[12]  It cannot be gainsaid that the parties disagree as to whether

---

     [12]"While a court considering a summary judgment motion based upon qualified immunity
'usually' must 'adopt .. . the plaintiff's version of the facts,' that is not true to the extent there is
clear contrary video evidence of the incident at issue." *Thomas v. Durastanti*, 607 F.3d 655, 659
(10th Cir. 2010) (quoting *Scott v. Harris*, 550 U.S. 372, 378-80 (2007)).  Like the court in
*Thomas,* I recognize that the video and audio evidence submitted by the parties "did not capture
everything" and, at least in part, is susceptible to differing interpretations.

any use of force was required on February 29, 2012, the actual amount of force used by Defendants at various stages of the incident, and the nature and extent of Mr. Stevenson's injuries.  That said, the following undisputed facts can be gleaned from the available record.

At all times relevant to this case, Plaintiff was an inmate at CTCF.  During the early morning of February 29, 2012, Mr. Stevenson admittedly refused to comply with Correctional Officer Gary Meyers' order to produce for inspection the contents of a manilla envelope in Plaintiff's possession.  The documents in question were grievances that Mr. Stevenson intended to submit to his case manager.[13]  Believing that he "only had to obey orders that were 'reasonable,'" Mr. Stevenson refused to give his materials to Officer Meyers, preferring instead to risk a "write-up" and possible disciplinary hearing.  Mr. Stevenson walked away from Officer Meyers at the Cell House 1 upper control center and returned to his cell, where he left his materials.  Plaintiff then gathered a towel, tooth brush and tooth paste and returned to the day hall.[14]

Shortly thereafter, Sergeant Karen Clinkinbeard and Officer Jessica Hanson approached Mr. Stevenson in the Upper Vestibule of Cell House 1.  After a verbal exchange, Defendant Clinkinbeard ordered Plaintiff to submit to being handcuffed.[15]  Mr. Stevenson disputed

---

[13]Plaintiff's Complaint does not allege any constitutional violations on the part of Correctional Officer Meyers, and I find that any factual disputes concerning the specifics of Plaintiff's interaction with Officer Meyers on February 29, 2012 are not material to the Eighth Amendment claim for excessive force in this case.

[14]*See* Exhibit 1 (doc. #147-1, the Stevenson Declaration at ¶¶ 4 and 5), attached to Plaintiff's Response.

[15]*See* Exhibit B (doc. #118-2, the Stevenson Deposition, at 63:9-24), Exhibit C (doc. #118-3, the Affidavit and Incident Report of Defendant Clinkinbeard), and Exhibit E (doc. #118-6, the Affidavit and Incident Report of Defendant Hanson), attached to Defendants' Excessive Force Motion.

Defendant Clinkinbeard's statement that the earlier incident with Officer Meyers had "disrupted the facility" and said that he wanted to see the shift commander.[16] When Defendant Clinkinbeard repeated her order for him to submit to handcuffing, Mr. Stevenson raised his arms out of the officers' reach and asked them to wait until the shift commander arrived.[17] Mr. Stevenson admits that he did not want to be handcuffed and told the officers that he would not "cuff up."[18] Rather than complying with Sergeant Clinkinbeard's commands, Mr. Stevenson dropped to the floor and lay face down on the ground with his arms beneath his body.[19] Mr. Stevenson concedes that he simply "didn't want to get cuffed up" and that he "resisted the application of the cuffs."[20] Defendant Clinkinbeard admits that she attempted to gain control of

---

[16]*See* Exhibit B (doc. #118-2, the Stevenson Deposition, at 63:16-24), attached to Defendants' Excessive Force Motion.

[17] *See* Exhibit B (doc. #118-2, the Stevenson Deposition, at 71:16-21 and 73:9-12), Exhibit C (doc. #118-3, the Affidavit and Incident Report of Defendant Clinkinbeard), and Exhibit E (doc. #118-6, the Affidavit and Incident Report of Defendant Hanson), attached to Defendants' Excessive Force Motion.

[18]*See* Exhibit B (doc #118-2, the Stevenson Deposition, at 66:9-15), attached to Defendants' Excessive Force Motion. *See also* Exhibit A (doc. #118-1, the Incident Report and Affidavit of Officer Gary Meyers), Exhibit C (doc. # 118-3, the Affidavit and Incident Report of Defendant Clinkinbeard), and Exhibit E (doc. 118-6, the Affidavit and Incident Report of Defendant Hanson), attached to Defendants' Excessive Force Motion

[19]*See* Exhibit B (#118-2, the Stevenson Deposition, at 73:18-19), attached to Defendants' Excessive Force Motion and Exhibit 1 (doc. #147-1, Stevenson Declaration, at ¶ 13), attached to Plaintiff's Response.

[20]*See* Exhibit B (doc. #118-2, the Stevenson Deposition, at 78:15-16, 81:15-25, and 82:1-13), attached to Defendants' Excessive Force Motion and Exhibit 1 (doc. #147-1, the Stevenson Declaration, at ¶ 15) attached to Plaintiff's Response. *See also* Exhibit U (CDOC Administrative Regulation 150-01), attached to Defendants' Excessive Force Motion. That Administrative Regulation, at page 12, states that an offender commits the Class II offense of Disobeying a Lawful Order when he "refuses to obey a verbal or written order or instruction given by a DOC employee . . . that is reasonable in nature and that gives reasonable notice of conduct expected."

Mr. Stevenson and secure his hands behind his back by using various control techniques, including a Mandibular Angle pressure procedure.[21]

Sergeant Jason Espinoza and Officer Dominic Moschetti were the first officers to arrive at the Upper Vestibule in  Cell House 1 in response to calls for help.  When they arrived, Mr. Stevenson was lying prone on the floor and Defendants Clinkinbeard and Hanson were still attempting to place him in handcuffs.  Defendant Espinoza admits that while Mr. Stevenson was lying unhandcuffed on the floor, he discharged his taser against Plaintiff's back three times, without apparent effect.  Defendant Espinoza claims that he used his taser only after Mr. Stevenson failed to comply with his repeated commands to submit to handcuffing, and that he warned Plaintiff that he would be tased if he continued to disobey the officers.[22]  Additional correctional officers continued to respond to the altercation at the Upper Vestibule, until there were approximately twelve officers either joining in the effort to restrain Mr. Stevenson or observing from the periphery of the scuffle on the floor.[23]

Correctional officers eventually were able to handcuff Plaintiff's wrists behind his back.  Mr. Stevenson admits that he verbally refused to come to his feet as directed by the officers and stated that they would have to carry him.  According to Plaintiff, his compliance was "contingent

---

[21]*See* Exhibit C (doc. # 118-3, the Affidavit and Incident Report of Defendant Clinkinbeard), attached to Defendants' Excessive Force Motion.

[22]*See* Exhibit G (doc. #118-8, the Affidavit and Incident Report of Defendant Espinoza), attached to Defendants' Excessive Force Motion.  *See also* Exhibit C (doc. #118-3, the Affidavit and Incident Report of Defendant Clinkinbeard) and Exhibit H (doc. #118-9, the Affidavit and Incident Report of Officer Dominic Moschetti), attached to Defendants' Excessive Force Motion.

[23]*See* Exhibit D-1 (doc. #118-4, video footage from the Upper Vestibule camera), attached to Defendants' Excessive Force Motion.

on [the officers] loosening the [hand]cuffs before hand" because he "did not trust the staff to loosen the cuffs once I stood up."[24]  When Plaintiff continued to refuse to walk, he was lifted onto a backboard and secured with straps.  Officers then carried the backboard down the stairs and placed the backboard on a gurney.  Mr. Stevenson was brought by gurney to a medical clinic and then to a segregation cell.

The Upper Vestibule camera footage captured the incident starting when Defendants Clinkinbeard and Hanson first approached Mr. Stevenson.  A conversation between Defendant Clinkinbeard and Plaintiff continues for approximately 80 seconds, at which point Defendant Hanson reaches for Mr. Stevenson's left arm.  Plaintiff immediately raises both arms vertically over his head.  Defendant Hanson reaches up and grabs Mr. Stevenson's left elbow while Defendant Clinkinbeard directs Plaintiff toward the wall to his left.[25]  While continuing to engage in conversation with the officers, Mr. Stevenson drops to his knees beside the wall, with Defendant Hanson holding his left wrist.[26]  Thereafter, Mr. Stevenson continues to passively resist the officers' attempts to apply handcuffs, eventually lying prone on the ground with his hands under his body.[27]  The Upper Vestibule camera captures Plaintiff's continued efforts to keep his hands away from Defendants Clinkinbeard and Hanson, notwithstanding their efforts to place his arms behind his back.  While Plaintiff does not appear to be physically aggressive

---

[24]*See* Exhibit 1 (doc. #147-1, the Stevenson Declaration, at ¶¶ 20 and 21), attached to Plaintiff's Response, and Exhibit B (doc. #118-2, the Stevenson Deposition, at 85:12-25 and 86:1-15), attached to Defendants' Excessive Force Motion.

[25]*See* Exhibit D-1, at time code 1:30.

[26]*See* Exhibit D-1, at time code 1:40.

[27]*See* Exhibit D-1, at time code 1:58.

37

toward these officers, he clearly is not complying with their instructions and impeding their efforts.

The Upper Vestibule camera footage shows the arrival of Defendant Espinoza and Officer Moschetti.[28] All four officers have their backs to the camera and are generally obstructing the view of Mr. Stevenson who remains face down on the ground and unhandcuffed. Additional officers continue to come into view and join the efforts to restrain Mr. Stevenson. Approximately four and a half minutes after the start of the incident, Mr. Stevenson clearly has been handcuffed and is being assisted to his feet, which have not been restrained.[29]  In the camera footage, Mr. Stevenson almost immediately turns toward the floor, however his back, as well as the backs of most of the officers are to the camera, and it is impossible to discern how or why Plaintiff is going back toward the floor.[30]  However, once Mr. Stevenson is moving toward the floor, the camera captures several officers holding his limbs and lowering him onto the floor.[31]  At one point, with his wrists handcuffed behind his back and while lying on the floor, Mr. Stevenson rolls toward his right side.[32]  It appears from the camera footage that he may be speaking to the officers, although it is impossible for the uninitiated observer to identify any particular male officer.  For the next several minutes Mr. Stevenson remains handcuffed on the floor with officers holding his extremities.  During this period, Plaintiff's legs are being held by

---

[28]*See* Exhibit D-1, at time code 2:37.

[29]*See* Exhibit D-1, at time code 4:41.

[30]*See* Exhibit D-1, at time code 4:44.

[31]*See* Exhibit D-1, at time code 4:49.

[32]*See* Exhibit D-1, at time code 6:05.

officers, but are not in restraints.  His left leg can be seen moving, but there does not appear to be

any aggressive kicks directed toward the officers.  Eventually, six officers pick up Mr. Stevenson

and, with his body parallel to the floor, begin moving toward the stairs at the far end of the

Upper Vestibule.[33]  While the camera's view is quite obscured, it appears that Mr. Stevenson

returns to the floor before reaching the stairs.[34]  Officers eventually pick Plaintiff up and carry

him the rest of the way to stairs before passing out of camera view.[35]

     Audio and video recordings from Officer Robles's body camera captured the events of

February 29, 2012 starting when Mr. Stevenson was placed on the backboard on the Upper

Vestible and continuing through his transport to and placement in a segregation cell.  While

being strapped to the backboard, Mr. Stevenson can be heard asking officers to "loosen that

strap" and "let go of my arm," and complaining that the officers are "doing that on purpose" and

"that's unnecessary, I am restrained."  The audio also records Mr. Stevenson making repeated

references to "excessive force," "violation of civil rights," claiming that he asked the officers

"four times to loose these [handcuffs]," and telling the officers that they "can't use these

handcuffs as punishment, there's laws against that."  However, much of the audio tape is

inaudible to the uninformed listener, or garbled because Mr. Stevenson is either face down away

from the officer's body camera or multiple people speaking at the same time.[36]

     An anatomical form completed by Nurse Jody Bufmack on February 29, 2012 noted that

---

[33]*See* Exhibit D-1, at time code 11:26.

[34]*See* Exhibit D-1, at time code 11:54.

[35]*See* Exhibit D-1, at time code 12:56.

[36]*See* Exhibit D-2 (doc. #118-5, audio and video recordings from Officer Jerod Robles' body camera), attached to Defendants' Excessive Force Motion.

Mr. Stevenson had "six small raised red bumps" on his back, a chipped right front tooth, a

"superficial non-bleeding laceration" on his lip, "superficial abrasions x 2 both wrists,"

"indentation of skin . . . and abrasion" and that Plaintiff had complained of "neck pain."

Apart from the foregoing undisputed facts, the court must view all material disputed facts

in a light most favorable to Mr. Stevenson and must draw all reasonable inferences in favor of

the non-moving party.

Mr. Stevenson, in his Response and attached exhibits, insists that during his initial

exchange with Defendants Clinkinbeard and Hanson, he was never "aggressive or hostile, nor

loud or boisterous," and that he was not "physically resistive" after being ordered to cuff up.[37]

*Id.*  Plaintiff contends that while he "remained lying in the prone position repeatedly asking to

talk to the shift commander," Defendants Clinkinbeard and Hanson applied pressure techniques

to his head and neck area and "Clinkinbeard's pressure techniques, accompanied by her twisting

of his neck and back, caused Mr. Stevenson significant pain and discomfort."[38]  In addition to the

taser discharged by Defendant Espinoza, Plaintiff maintains that unspecified "officers [applied]

pressure techniques to his head and neck area, which caused pain and discomfort."[39]  Mr.

Stevenson claims that while the officers' pressure techniques and Defendant Espinoza's taser

---

[37]*See* Exhibit 1 (doc. #147-1, the Stevenson Declaration, at ¶¶ 11 and 13), attached to Plaintiff's Response.

[38]*See* Exhibit 1 (doc. #147-1, the Stevenson Declaration, at ¶¶ 13 and 14), attached to Plaintiff's Response.

[39]Notably, the audio portion of Officer Roble's body camera recording captures Mr. Stevenson saying "sure you don't want to tase me some more, that shit felt kinda good."  *See* Exhibit D-2 (doc. #118-5, at time code 36:42), attached to Defendants' Excessive Force Motion.

caused him to move involuntarily, he never resisted "with violence or physical force."[40]

According to Plaintiff, while he was still in the Upper Vestibule, an unidentified officer "squeezed the handcuffs tightly around [his] wrists. The handcuff cut deep into his skin, touched bone, and quickly began to cut off circulation." Although Mr. Stevenson "immediately complained that the cuffs were too tight and informed the officers that he had carpal tunnel and nerve damage," the officers did not respond.[41] When Defendant Espinoza ordered Mr. Stevenson to walk, he "again complained that the cuffs were too tight and asked that they be loosed," but Espinoza did not reply.[42] Because Plaintiff refused to walk unless his handcuffs were adjusted, officers picked him up. According to Mr. Stevenson, he was dropped to the floor by Defendant Sullivan,[43] who then used his hands and body weight to grind Plaintiff's front teeth into the floor,

---

[40]*See* Exhibit 1 (doc. #147-1, the Stevenson Declaration, at ¶¶ 17 and 18), attached to Plaintiff's Response.

[41]*See* Exhibit 1 (doc. #147-1, the Stevenson Declaration at ¶ 19), attached to Plaintiff's Response.

[42]*See* Exhibit 1 (doc. #147-1, the Stevenson Declaration at ¶ 22), attached to Plaintiff's Response.

[43]Officers present in the Upper Vestibule on February 29, 2012 give differing accounts of Plaintiff's conduct and how he found himself back on the floor. Officer Meyers wrote in his Incident Report that when "Stevenson eventually stood with the assistants (sic) of staff," he "attempted to assault staff by using a left knee strike. Once Offender Stevenson elevated his left leg his right leg came out from under him and he was assisted to ground once again by responding staff." *See* Exhibit A (doc. #118-1, the Affidavit and Incident Report of Officer Meyers), attached to Defendants' Excessive Force Motion. In his Incident Report, Defendant Cordova recounted that after Plaintiff refused to walk down the stairs from the Upper Vestibule, "[s]taff attempted to pick him up and he started to resist, kicking his legs. They placed him back on the floor [and] I ordered for a back board to be brought up to the vestibule." *See* Exhibit J (doc. #118-11, the Affidavit and Incident Report of Defendant Cordova), attached to Defendants' Excessive Force Motion. In her Incident Report, Defendant Hanson recounted that Plaintiff "began to stand up and began to become aggressive again, at which point we directed him to floor for his safety and ours. I was holding his left leg when he continued to attempt to kick at staff and continued to refuse order to comply." *See* Exhibit E (doc. # 118-6, the Affidavit and

which caused a laceration to Plaintiff's lip, chipped his teeth and strained his neck.[44]

Mr. Stevenson claims that he repeatedly complained to Defendant Cordova about his handcuffs being too tight and asked several times to have the cuffs loosed, explaining to Cordova that he already had carpal tunnel and nerve damage to his hands and wrist.  While Plaintiff was complaining to Defendant Cordova about the handcuffs, an unidentified correctional officer allegedly bent Plaintiff's wrists hard against the cuffs.  That prompted Mr. Stevenson to ask Defendant Cordova if he trained his staff to use handcuffs to inflict pain.  According to Plaintiff, Defendant Cordova did not reply, and also did not direct the officers to stop manipulating Mr. Stevenson's elbow and arms, and or to loosen the cuffs."[45]

---

Incident Report of Defendant Hanson), attached to Defendants' Excessive Force Motion. Defendant Clinkinbeard claimed that Mr. Stevenson "refused to walk and struggled [and] went back to the ground."  *See* Exhibit C (doc. 118-3, the Affidavit and Incident Report of Defendant Clinkinbeard), attached to Defendants' Excessive Force Motion.  Correctional Officer Carol Snow in her Incident Report, stated that Mr. Stevenson refused to "walk on his own therefore being passively resistive by going limp."  *See* Exhibit O (doc. #118-16, the Affidavit and Incident Report of Carol Snow), attached to Defendants' Excessive Force Motion.  Defendant Benavidez also described how, when Stevenson was asked to walk down the stairwell, he "would not comply and let his body go limp and he went to the ground with staff assistance." *See* Exhibit K (doc. # 118-12, the Affidavit and Incident Report of Defendant Benavidez), attached to Defendants' Excessive Force Motion.  Defendant Espinoza recalled that "Stevenson verbally refused to comply with instruction to be escorted [down the stairs] and dropped himself to the floor."  *See* Exhibit G (doc. # 111-8, the Affidavit and Incident Report of Defendant Espinoza), attached to Defendants' Excessive Force Motion.

[44]*See* Exhibit 1 (doc. #147-1, the Stevenson Declaration, at ¶¶ 23 and 24), attached to Plaintiff's Response.

[45]*See* Exhibit 1 (doc. #147-1, the Stevenson Declaration, at ¶¶ 25-27), attached to Plaintiff's Response.  Mr. Stevenson claims that in complaining about the handcuffs, he specifically "asked about the pinky rule."  Defendant Cordova admitted during his deposition that that handcuffs should not be used as punishment and that he recalled Mr. Stevenson twice complaining that his handcuffs were too tight.  Defendant Cordova conceded that someone could experience pain if handcuffs were applied too tightly and that he had been taught to place a finger between the handcuff and wrist as a way of determining whether a handcuff was too tight. Defendant Cordova also acknowledged that on February 29, 2012, he did not apply this "pinky

Mr. Stevenson asserts that after he was handcuffed and strapped to the backboard, Defendant Benavidez inflicted pain by bending his wrist and then, when Mr. Stevenson complained, pulling on his elbow.[46]  As Plaintiff explained during his deposition: "The force was excessive.  They didn't have to bend my wrists.  They didn't have to pull my elbow.  They could have loosened those cuffs at any time after I was subdued, you know, and I asked them to."[47]

Mr. Stevenson claims that later on February 29, 2012, he took personal stock of his injuries.  Plaintiff asserts that he suffered swollen abrasions on his lip, a chipped right tooth, a stiff and painful neck, painful welts on his back caused by the taser, painful swelling, bruising and deep indentations on his wrists, pain in both hands, an injury to the base of his thumb, and progressive nerve damage to that same thumb.[48]  Mr. Stevenson also complained that Nurse Bufmack had not adequately documented his injuries.[49]  According to Mr. Stevenson, since the incident on February 29, 2012, his left hand has gotten progressively worse and that "over time I

---

test" (or any other test) to determine whether Mr. Stevenson's handcuffs should be loosened. *See* Exhibit J (doc. #118-11, the Affidavit and Incident Report of Defendant Cordova) and Exhibit V (doc. #118-22, the Cordova Deposition, at 63:13-21, 68:10-14, 69:9-12, 70:1-25, 71:1-23, 72:25, and 73:1-3), attached to Defendants' Excessive Force Motion.

[46]*See* Exhibit 1 (doc. #147-1, the Stevenson Declaration, at ¶ 27) attached to Plaintiff's Response.  Defendant Benavidez acknowledges that he was involved in restraining Mr. Stevenson in the Upper Vestibule and that when Plaintiff was placed on the backboard, "[he] assisted by holding the lower right side of the backboard b his right leg [and] helped move him down the stairwell."  *See* Exhibit K (doc. #118-12, the Affidavit and Incident Report of Defendant Benavidez), attached to Defendants' Excessive Force Motion.

[47]*See* Exhibit 1 (doc. #147-1, the Stevenson Declaration, at ¶ 29, attached to Plaintiff's Response, and Exhibit B (doc. #118-2, the Stevenson Deposition, at 213:4-9), attached to Defendants' Excessive Force Motion.

[48]*See* Exhibit 1 (doc. #147-1, the Stevenson Declaration, at ¶ 40), attached to Plaintiff's Response.

[49]*See* Stevenson Declaration, at ¶¶ 42-49, attached to Plaintiff's Response.

started losing feeling."[50]

Given how the events of February 29, 2012 unfolded, the number of correctional officers involved and the varying roles of each defendant, the court views the Complaint as raising two distinct Eighth Amendment claims. The first claim revolves around the defendants' actions and use of force in placing Mr. Stevenson in restraints. The second claim addresses the defendants' continued use of force after Plaintiff was handcuffed in the Upper Vestibule and placed on a backboard for transport to the medical unit.

b.  <u>Defendants' Use of Force in Initially Restraining Mr. Stevenson</u>

After reviewing the available records and considering that evidence in a light most favorable to Mr. Stevenson, I find that Plaintiff has failed to come forward with facts sufficient to establish that Defendants committed an Eighth Amendment violation by using force to place him in restraints. Mr. Stevenson may have felt that Defendants Clinkinbeard's response to his earlier disagreement with Officer Meyers was unreasonable or inappropriate, but that did not give him the right to refuse a lawful command. "While all prisoners are entitled to Eighth Amendment protections against excessive use of force, inmates do not have a right to call the shots when it relates [to] obedience to lawful commands from the officers." *Ellerbe v. Bennett*, No. 3:10-cv-130-RJC, 2012 WL 4321308, at *9 (W.D.N.C. Sept. 20, 2012), *aff'd,* 511 F. App'x 234 (4th Cir. 2013) (in granting the defendants' motion for summary judgment and finding that the plaintiff inmate did not present evidence to support his excessive force claim, the court noted that a prisoner does not have the freedom "to cho[o]se which command to follow and which command to disregard"). *Cf. Provencio v. Vazquez*, No. 1:07-cv-00069-AWI-JLT, 2010 WL

---

[50] *See* Exhibit B (doc. #118-2, the Stevenson Deposition, at 7:8-20), attached to Defendants' Excessive Force Motion.

2490949, at *5 (E.D. Cal. Jun. 16, 2010), *rec. adopted,* 2010 WL 2854277 (Jul. 21, 2010) (while Eighth Amendment protects inmates from the use of force that is sadistic and malicious, "it does not mandate that prison officials . . . wait until an inmate deigns to comply with orders"); *United States v. Jennings*, 855 F. Supp. 1427, 1436 (M.D. Pa. 1994), *aff'd,* 61 F.3d 897 (3d Cir. 1995) (noting that the plaintiff inmate "was required to obey the lawful directions of the corrections officers, including the order to cuff up" and rejecting the notion that a prisoner is justified in refusing to obey commands based solely upon his or subjective belief).

As previously noted, the Eighth Amendment does not bar any and all use of force against a prisoner, or convert "every malevolent touch by a prison guard" into a constitutional violation. Moreover, the subjective prong of the Eighth Amendment standard distinguishes between force applied in a good faith effort to maintain or restore discipline, and force applied "maliciously and sadistically for the very purpose of causing harm." Even if, in hindsight, Defendants Clinkinbeard and Hanson might have responded differently to Mr. Stevenson's frustrations and even if other responding officers might have used different techniques to handcuff Mr. Stevenson, that conclusion does not, standing alone, establish a constitutional violation.

Once Mr. Stevenson decided to disobey Defendant Clinkinbeard's order to "cuff up" and purposely frustrate Defendants' efforts to secure his arms, he triggered a disciplinary confrontation that necessarily led to the use of force. *Cf. Easley v. Little*, No. 1:14-cv-891, 2016 WL 4006676, at *7 (S.D. Ohio, June 28, 2016) (in granting the defendants' motion for summary judgment, the court held that defendant was entitled to use force, including pepper spray, to maintain order; "Plaintiff's action, while not egregious, still conveyed his desire to remain uncooperative and disobey the officer's orders"); *Mitchell-Pennington v. McGovern*, No. 09-

45

3106-SAC, 2009 WL 1938979, at *4 (D. Kan. Jul. 6, 2009) (in finding that plaintiff's allegations were insufficient to state an Eighth Amendment violation for use of excessive force, the court noted that plaintiff had disobeyed orders and his "actions were clearly contrary to the legitimate penological interest of maintaining control and discipline in the prison facility;" "under such circumstances, the use of some physical force can hardly be considered repugnant to the conscience of mankind"); *Garrett v. Martin*, No. 2:97CV28, 1999 WL 1201959, at *12 (E.D. Va. Dec. 6, 1999), *aff'd in relevant part, vacated in part on other issue,* 229 F.3d 1142 (Table) (4th Cir. 2000) (unpublished) (in finding in favor of defendants on the plaintiff's Eighth Amendment excessive force claim, the court observed that the confrontation with correctional officers "stem[med] from plaintiff's failure to obey institutional rules" and that "the force used to subdue [the prisoner] was not only appropriate and necessary but also invited by plaintiff's behavior").

Under the circumstances, I find that no reasonable juror could conclude that Defendants' use of force in subduing and placing Mr. Stevenson in handcuffs was excessive under the prevailing Eighth Amendment standard. *See Smuda v. Stewart*, No. 1:14-cv-142, 2016 WL 3919409, at *5 (D. N.D. June 29, 2016), *rec. adopted,* 2016 WL 3926256 (Jul. 18, 2016) (recommending that defendants' motion for summary judgment be granted in a case where the plaintiff inmate alleged excessive force based, in part, upon defendants' use of pressure point compliance techniques, including a mandibular angle). Mr. Stevenson admits that he did not comply with the officers' commands to be handcuffed, that he did not want to be handcuffed, and that he positioned his hands under his body to impede the officers' efforts. That conduct is clearly evident in the Upper Vestibule camera footage. Defendant Espinoza states that he utilized his taser only after Mr. Stevenson failed to comply with the officers' commands, and

46

when it appeared that other compliance techniques were ineffective.  On this record, a reasonable juror could not find that Defendants Clinkinbeard, Hanson, Espinoza or other correctional officers acted maliciously and sadistically in using force in order to gain control of Mr. Stevenson and handcuff his wrists.

Defendants' use of force was not unlike the circumstances in *Shelton v. Chorley*, No. 1:07-CV-560-MHM, 2011 WL 1253655 (E.D. Cal. Mar. 31, 2011), *aff'd*, 487 F. App'x 388 (9th Cir. 2012).  In that case, the court granted defendant's motion for summary judgment as to the plaintiff-inmate's excessive force claim.  The defendant correctional officer attempted to handcuff Shelton after a verbal disagreement.  The plaintiff ignored the officer's commands to stop resisting and continued "to twist his body while simultaneously stating that [he] was not resisting." *Id.* at *2.  Mr. Shelton insisted that he was moving only because the defendant "was twisting his arms in an especially painful fashion." *Id.*  The court concluded that

> Plaintiff's insubordination, agitated state, and decision to quickly turn his body away from Defendant created a potentially dangerous situation necessitating the use of force like that applied by Defendant.  Likewise, Plaintiff's argument that he was not out of compliance with [prison policies] and that Defendant misunderstood [Plaintiff's position] is also irrelevant to his excessive force claim. Plaintiff's belief in the correctness of his position did not give Plaintiff the right to disobey Defendant's orders and does not therefore explain why the application of force was unnecessary or excessive. . . .  Plaintiff also admits that he was resisting Defendant's attempts to cuff him, an action which clearly necessitated Defendant's continued holding and twisting of Plaintiff's arm and which is likely to be painful under any circumstance.

*Id.* at *6.  The same conclusion is warranted in this case.

I will grant Defendants' Excessive Force Motion with respect to the use of force employed by Defendants to restrain and handcuff Mr. Stevenson in the Upper Vestibule of Cell House 1 on February 29, 2012.  As to the use of force employed during this particular portion of

the incident, I find that Mr. Stevenson has not come forward with sufficient facts to establish a constitutional violation by any defendant. Plaintiff's evidence, even when viewed most favorably, does not satisfy either the objective or subjective elements of an Eighth Amendment excessive force claim. *Cf. Green v. Branson*, 108 F.3d 1296, 1301 (10th Cir. 1997) ("Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain . . . , the case should not go to the jury.") (quoting *Whitley*, 475 U.S. at 322).

c.    Defendants' Actions After Mr. Stevenson was Restrained

Once Plaintiff was restrained and his wrists handcuffed behind his back, the evidentiary record bearing on the Eighth Amendment excessive force claim is less certain. From my review of the available record, and construing that record in a light most favorable to Mr. Stevenson, I find that Plaintiff has presented evidence that raises factual disputes as to the use of force and whether that force was used maliciously or wantonly after Mr. Stevenson was restrained with handcuffs in the Upper Vestibule. *Cf. Mitchell v. Krueger,* 594 F. App'x 874, 876-77 (7th Cir. 2014) (in reversing the trial court's grant of summary judgment in favor of defendants, held that while the correctional officers' initial use of force in subduing the plaintiff was not excessive, there were genuine issues of material fact as to whether the defendants' subsequent use of force after the plaintiff was subdue was excessive).

Mr. Stevenson asserts that after he was restrained, he complained repeatedly that the handcuffs were too tight and asked that they be loosened. Notably, Mr. Stevenson renewed that request after he was strapped face-down on a backboard, and incapable of presenting any physical threat to the several officers carrying or accompanying the backboard. *Cf. Kitchen v.*

48

*Dallas County,* 759 F.3d 468, 479 (5th Cir. 2014) (recognizing that an Eighth Amendment

violation may be found "where a restrained or subdued person is subject to the use of force").

Defendant Cordova, the shift commander at the time of the incident, recalls that Mr. Stevenson

twice asked that his handcuffs be loosened.  There is some evidence from which a reasonable

juror could conclude that Mr. Stevenson's requests fell on deaf ears, not because of any

legitimate security concerns, but rather because he would not be compliant and insisted that the

officers carry him.  If believed by a jury, Mr. Stevenson's testimony might suggest that the

handcuffs were not loosened in a good faith effort to maintain or restore discipline, but rather

maliciously for the purpose of causing pain.  *Cf. Cavanaugh v. Woods Cross City*, 718 F.3d

1244, 1255 (10th Cir. 2013) (acknowledging in a § 1983 excessive force claim that disputed

facts that bear on the use of force ordinarily should go to the jury).  *See also Oliver v. Johnson*,

No. 11-00520-KD-B, 2014 WL 4568724, at *20 (S.D. Ala. Sept. 11, 2014) (while the court held

that some use of force was appropriate in light of the plaintiff inmate's refusal to comply with an

order that he submit to handcuffs, held that some portion of the plaintiff's excessive force claim

should proceed to trial "[b]ased upon the parties' conflicting allegations and the objective

medical evidence in this case;" finding that while "a close call, viewing the evidence in the light

most favorable to [plaintiff], he has created a genuine issue of whether his claims involve more

than a *de minimis* or insignificant use of force").

Focusing on the allegations against the moving Defendants, Mr. Stevenson claims that

once he was handcuffed and strapped to the backboard, Defendant Benavides inflicted

unnecessary pain by bending his wrist and pulling on his elbow.  That description may be at odds

with Defendant Benavides' statement that once Plaintiff was on the backboard, he assisted

officers in carrying Stevenson down the stairs by "holding the lower right side of the backboard by his right leg." Defendant Benavides also stated in his Incident Report that he "was holding on to the right arm of Stevenson when we proceeded to leave the holding cell in Cell House Three" and he "went limp and was assisted to the floor."[51] The court is not in a position to resolve any conflicts in the accounts provided by Plaintiff Stevenson and Defendant Benavides. *Cf. McCollum v. United States*, No. 12-cv-01175-PAB-MJW, 2014 WL 788062, at *3-4 (D. Colo. Feb. 26, 2014) (in denying defendants' motion for summary judgment, the court concluded that "even if the decision to restrain plaintiff was based entirely upon his admitted failure to completely comply with a correctional officer's commands . . . , a reasonable juror could find that forcing a handcuffed prisoner to the floor and kneeing him in the back is greater force than that particular emergency demanded"). At this juncture, it is enough that apparent inconsistencies exist and I must accept Plaintiff version of the facts. *Cf. Rutherford v. Hines*, No. 2:11-cv-3139-DCN-BHH, 2013 WL 670907, at *5 (D. S.C. Jan. 31, 2013), *rec. adopted,* 2013 WL 668510 (Feb. 22, 2013) (in denying defendants' motion for summary judgment on plaintiff's claim for use of excessive force, the court recognized that the parties' versions of events were materially different and there was a genuine issue of material fact concerning whether defendants used excessive force once the plaintiff was strapped into a restraint chair).

Mr. Stevenson also asserts that Defendants Cordova and Holloway were present on February 29, 2012, but failed to exercise their supervisory responsibilities and intervene when they were aware that subordinates were using force that was wholly unnecessary given that Plaintiff was restrained. *Cf. Woodward v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir.

---

[51]*See* Exhibit K (doc. #118-12, Affidavit and Incident Report of Defendant Benavides), attached to Defendants' Excessive Force Motion.

1992) (holding that a defendant in a supervisory position may be liable for an alleged

constitutional violation when he or she personally directed subordinates to take the action that

resulted in the constitutional violation, or when the supervisor defendant had actual knowledge

that the subordinates were committing the alleged violation and acquiesced in its commission).[52]

Both Defendants Cordova and Holloway held supervisory positions on February 29, 2012 and

were present during much of the incident in the Upper Vestibule.  Defendant Cordova admits

that Mr. Stevenson complained at least twice about the pain caused by the tight handcuffs, but he

(Cordova) took no action in response to those complaints.  *Cf. Webb*, 2016 WL 931218, at *3-4

(in denying the defendant's motion for summary judgment, the court held that the plaintiff had

put forth "sufficient evidence from which a reasonable jury could find" that defendant had

violated plaintiff's right to be free from excessive force by subjecting him to unduly tight

handcuffs in response to comments made by the inmate).  *Compare Stanton v. Furlong*, 73 F.

App'x 332, 334 (10th Cir. 2003) (in acknowledging the "necessarily circumstantial

determination" that arises in excessive force cases, held that the trial court properly entered

judgment for the defendant correctional officer after noting "the length of time during which the

handcuffed [inmate] voiced no discomfort while speaking with the shift commander, and the

relatively minor indicia of trauma ultimately found on medical examination").

---

[52]The Tenth Circuit in *Arocho v. Nafziger*, 367 F. App'x 942, 956 (2010) questioned whether the analysis in *Woodward* was still controlling in the wake of the Supreme Court's decision in *Iqbal*.  The Tenth Circuit suggested, without deciding, that a showing of "purpose rather than knowledge is required" to impose liability on an official charged with violations arising from his or her supervisory responsibilities.  *See also Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010) (in acknowledging that consensus "remains elusive" as to the meaning of the *Iqbal's* discussion of supervisory liability under *Bivens* and § 1983, the Tenth Circuit concluded that a plaintiff "must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well").

Defendant Holloway, in his Incident Report, states that when he arrived in the Upper Vestibule, Plaintiff was lying prone on the floor and "in hand restraints with staff surrounding him."  Defendant Holloway then claims he observed Defendant Cordova speaking with Mr. Stevenson for "several minutes" and that he (Holloway) heard Plaintiff refuse to obey Captain Cordova's command to stand up.  At some point, Defendant Holloway placed leg restraints on Mr. Stevenson, but also states in his Incident Report that "[s]taff aided Stevenson to stand up and I [Holloway] attempted to apply pressure to his mandibular angle to no avail."[53]  On this record, the court cannot presume that Defendant Holloway's use of force was necessary if Plaintiff was in hand and leg restraints, and was being assisted to his feet by other officers.  *Cf. Ruiz v. Davis*, No. 09-2042-STA-cgc, 2010 WL 3521746, at *9-12 (W.D. Tenn. Sept. 7, 2010) (in denying in part defendants' motion for summary judgment as to plaintiff's excessive force claim, the court found that plaintiff had raised a triable issue as to whether defendants used excessive force once they "had gotten Plaintiff under control;" also noted that it was "difficult to tell from the [video]tape what [was] happening").  It also appears that Defendant Holloway may have accompanied Mr. Stevenson as he was being transported on the gurney and, therefore, may have been in a position to hear Plaintiff repeat his complaints about the handcuffs.

Finally, there appears to be a factual dispute as to the nature and extent of Plaintiff's injuries.  Defendants contend that Mr. Stevenson's injuries were *de minimis*, based in part on the examination conducted by Nurse Bufmack and the corresponding record prepared on February 29, 2012.  However, Mr. Stevenson contends that Nurse Bufmack's notations are incomplete and do not reflect the full extent of his injuries.  Plaintiff also contends that his

---

[53]*See* Exhibit L (doc. #118-13, the Affidavit and Incident Report of Defendant Holloway), attached to Defendants' Excessive Force Motion.

attempts to obtain follow-up examinations and treatment were rebuffed. The court cannot resolve this factual dispute in the context of the pending motion.

One remaining issue concerns the allegations against Defendant Williams.  Although Mr. Stevenson claims that Defendant Williams was present during a portion of the incident, his description of Defendant Williams' role or involvement is less than informative.  According to Plaintiff, after being carried down from the Upper Vestibule and placed on a gurney, he noticed

> Lieutenant William's paten (sic) leather shoes, and made the comment: "Isn't that right Williams, I recognize those shoes."  When I later viewed the video, it was verified that Williams was present, as he can been seen standing in front of 3/4 left pod door blocking the view of the inmates and can be seen arriving in the "Vestibule Video" at 3:40 minutes and can be seen leaving or going out the door in the "Body Camera Video," just prior to my being wheeled out of the cellhouse door, at 3:40 minutes.[54]

A fair reading of that allegation suggests that Defendant Williams remained on the periphery of the incident and played no active role in restraining Plaintiff.  Mr. Stevenson's Declaration of December 15, 2015 contains no other references to Defendant Williams.  Notably, in his handwritten statement of March 14, 2012, Mr. Stevenson states that "[i]t would have been easy for Lt. [Holloway] and Capt. Cordova to exercise their authority, and order the officers to loosen the cuffs and otherwise use appropriate force.  This did not happen."[55]  Based on this record, I find that Plaintiff has not come forward with fact sufficient to sustain an Eighth Amendment

---

[54]*See* Exhibit 1 (doc. #147-1, the Stevenson Declaration at ¶ 29), attached to Plaintiff's Response.  However, Officer Andrew Weaver stated in his Incident Report that Mr. Stevenson arrived "in the cellhouse secured on backboard with velcro straps and being carried by Sergeant Sulllivan, Sergeant Fontenot, Sergeant Benavidez, Sergeant Espinoza and Officer Robles."  *See* Exhibit P (doc. #118-17, the Incident Report of Officer Weaver), attached to Defendants' Excessive Force Motion.

[55]*See* Exhibit F (doc. #118-7, Plaintiff's handwritten statement, at page 6) attached to Defendants' Excessive Force Claim.

violation by Defendant Williams.

## CONCLUSION

For the foregoing reasons, this court granted in part and denied in part Defendants'

Cordova, Nunez, Holloway, Topliss, Williams, Clinkinbeard, Espinoza, Bufmack, Benavidez,

and Bell's Motion for Summary Judgment Based on Plaintiff's Failure to Exhaust Prison

Administrative Remedies (doc. #117).  Defendants Nunez, Toplis, Bufmak and Bell must be

dismissed from this action without prejudice based upon Plaintiff Stevenson's failure to exhaust

administrative remedies as to those defendants.  That motion was denied as to Defendants

Cordova, Holloway, Clinkinbeard, Espinoza and Benavidez.  The dismissal of Defendants

Bufmack, Nunez and Bell rendered moot Defendant Bell's Motion for Summary Judgment (doc.

#119) and Defendants Nunez and Bufmack's Motion for Summary Judgment (doc. #120).  I

granted Defendants' Motion for Summary Judgment (doc. #118) as to Defendants Clinkinbeard,

Espinoza, and Williams, and denied the motion as to Defendants Cordova, Holloway and

Benavidez.  The first claim for excessive use of force under the Eighth Amendment will proceed

as to Defendants Cordova, Holloway and Benavidez.

Dated this 4th day of October, 2016.

BY THE COURT:

s/ Craig B. Shaffer
United States Magistrate Judge