**FILED**
**United States Court of Appeals**
**Tenth Circuit**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**May 11, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

_____

|  |  |
|---|---|
| WILLIAM R. STEVENSON,<br><br>　　　Plaintiff - Appellant,<br><br>v.<br><br>R. CORDOVA, in his individual and official capacities; D. NUNEZ, in his individual and official capacities; M. HOLLOWAY, in his individual and official capacities; K. TOPLISS, in his individual and official capacities; C. WILLIAMS, in his individual and official capacities; K. CLINKINBEARD, in his individual and official capacities; J. ESPINOZA, in his individual and official capacities; J. BUFMACK, in his individual and official capacities; M. BENAVIDEZ, in his individual and official capacities; A. BELL, in his individual and official capacities; G. SULLIVAN, in his individual and official capacities,<br><br>　　　Defendants - Appellees,<br><br>and<br><br>V. WOLFE; J. HANSON,<br><br>　　　Defendants. | No. 17-1053<br>(D.C. No. 1:14-CV-00649-CBS)<br>(D. Colo.) |

_____

## ORDER AND JUDGMENT[*]

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore

(continued)

_____

Before **BRISCOE**, **HARTZ**, and **McHUGH**, Circuit Judges.

_____

William R. Stevenson, a Colorado prisoner, filed a pro se civil rights action under 42 U.S.C. § 1983 alleging that correctional officers violated the Eighth Amendment by using excessive force to restrain him.  He challenges the district court's grant of summary judgment in favor of three defendants, a directed verdict in favor of one defendant, and the jury instructions in the trial on his claims against the remaining two defendants.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's judgment.

## I.   Background[1]

On February 29, 2012, Stevenson was approached by two female officers, including Sergeant Clinkinbeard, in an area of the prison referred to as the upper vestibule.  His interaction with these two officers and the subsequent events was recorded by a security camera.[2]  The security video shows other inmates walking through the upper vestibule as Stevenson spoke to the two officers.  Clinkinbeard ultimately ordered Stevenson to submit to being handcuffed.  There is no dispute that

---

ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] The factual summary is based on the summary judgment record viewed in the light most favorable to Mr. Stevenson.

[2] The resulting security video does not include an audio recording.

he refused to do so.  He first raised both of his arms above his head.  Then as the two officers attempted to force him to submit, he dropped to his knees and ultimately lay down on the floor with his arms beneath his body.

Two more correctional officers entered the upper vestibule and joined the struggle to handcuff Stevenson, including Sergeant Espinoza, who shot Stevenson in the back with a taser gun several times, the number of which is disputed.  Additional officers entered the upper vestibule as the struggle with Stevenson continued.  Ultimately, at least twelve officers arrived on the scene, including Sergeant Benavidez, Lieutenant Holloway, Lieutenant Williams, and the shift commander, Captain Cordova.

At some point (the exact timing is unclear in the security video), Espinoza was able to handcuff Stevenson's arms behind his back.  Stevenson felt Espinoza slam the handcuffs on, squeezing them forcefully, and he asserts that the handcuffs cut deep into his skin, touching bone and quickly cutting off his circulation.  Stevenson immediately complained that the handcuffs were too tight, but no officer took action to loosen them.  When Stevenson's arms and legs were restrained, Espinoza ordered him to stand and walk.  He agreed to walk only if the officers would loosen the handcuffs.  When several officers tried to lift him to his feet, he made his body limp and ended up back on the ground, where Captain Cordova knelt and spoke with him for several minutes and Stevenson continued to complain that the handcuffs were too tight.  At one point he cried out in pain when an officer pulled on his arm.

3

Because Stevenson still refused to walk, several officers lifted and carried him to the stairs at the far end of the upper vestibule, where they secured him to a backboard on his stomach with his hands still restrained behind his back.[3] He asserts that, while he was lying on the backboard, Sergeant Benavidez bent his wrists, let go when he cried out in pain, but then pulled on his elbow. He again asked that the handcuffs be loosened. The officers carried Stevenson down several flights of stairs where they secured the backboard to a gurney, then wheeled him across a yard to another building. In the medical unit, Stevenson again complained about the handcuffs being too tight, and they still were not loosened. The officers ultimately wheeled Stevenson into the segregation unit, where they removed and replaced the first set of handcuffs. Still refusing to walk, officers carried Stevenson to a segregation cell. The entire incident lasted approximately 60 minutes.

Stevenson filed this pro se action[4] alleging that defendants used excessive force in violation of the Eighth Amendment by tasing him, applying the handcuffs too tightly, manipulating his wrists and arms while he was handcuffed to cause him additional pain, and refusing to loosen the handcuffs. As relevant here, the district court granted summary judgment based on qualified immunity in favor of Williams,

---

[3] At about this point one of the officers activated his body camera, and the rest of the incident was recorded with both video and audio.

[4] Stevenson was represented by appointed counsel during the summary judgment and trial proceedings in the district court, but he proceeds pro se again on appeal.

Clinkinbeard, and Espinoza, but concluded that some excessive force claims against Cordova, Holloway, and Benavidez should proceed to trial. At the close of Stevenson's evidence, the district court granted Benavidez judgment as a matter of law under Fed. R. Civ. P. 50(a). The jury then returned a verdict in favor of Cordova and Holloway, finding that Stevenson had not proven his excessive force claims against them. On appeal, Stevenson challenges the district court's summary judgment and directed verdict rulings. He also asserts errors in the jury instructions.

## II.  Discussion

### A.  Excessive Force Standard

An Eighth Amendment excessive force claim "involves two prongs: (1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind." *Redmond v. Crowther*, 882 F.3d 927, 936 (10th Cir. 2018) (internal quotation marks omitted). "An official has a culpable state of mind if he uses force 'maliciously and sadistically for the very purpose of causing harm,' rather than 'in a good faith effort to maintain or restore discipline.'" *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). In applying this standard, we recognize that when faced with a disruption, prison officials must balance the need to restore discipline with the risk of injury to inmates when force is used. *See Hudson v. McMillian*, 503 U.S. 1, 6 (1992).

### B.    Summary Judgment Ruling

We review de novo a district court's grant of summary judgment based on qualified immunity. *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1208 (10th Cir. 2017), *cert. denied*, 138 S. Ct. 211 (2017).  A defendant's assertion of qualified immunity triggers a two-part analysis asking (1) whether the plaintiff has demonstrated a violation of a constitutional right and (2) whether that right was clearly established at the time of the violation.  *Id.*  The plaintiff bears the heavy burden of making this two-part showing, without which a court must grant qualified immunity.  *Id.*  And a court may address these inquiries in any order.  *Id.*

The district court first held that the law was clearly established on all of Stevenson's excessive force claims.  It then divided his claims into two parts, separately considering the defendants' use of force before and after Stevenson was restrained.  The court held that he failed to come forward with facts sufficient to establish that any defendant committed an Eighth Amendment violation by using force to subdue and place him in handcuffs.  But it held that his evidence raised factual disputes as to the use of force and whether it was excessive after he was restrained in the upper vestibule.  The court concluded that,

> [t]here is some evidence from which a reasonable juror could conclude that Mr. Stevenson's requests [that his handcuffs be loosened] fell on deaf ears, not because of any legitimate security concerns, but rather because he would not be compliant and insisted that the officers carry him.  If believed by a jury, Mr. Stevenson's testimony might suggest that the handcuffs were not loosened in a good faith effort to maintain or restore discipline, but rather maliciously for the purpose of causing pain.

R., Vol. VI at 193.  The district court allowed Stevenson's post-restraint claims against Cordova, Holloway, and Benavidez to proceed to trial, but granted summary judgment in favor of Clinkinbeard, Espinoza, and Williams.  On appeal, Stevenson argues there were material facts in dispute whether the latter three defendants used excessive force.[5]

### 1.     Claim of Excessive Force in Tasing Stevenson

Stevenson argues that Espinoza's use of a taser was unnecessary because he was outnumbered by the correctional officers, he was lying prone, and he was not resisting with physical force.  He also faults Espinoza for using a taser without first trying lesser forms of force.  But to succeed on an Eighth Amendment claim he must demonstrate more than "a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives." *Whitley*, 475 U.S. at 322. The evidence must support an inference that force was applied "maliciously and sadistically for the very purpose of causing harm." *Id.* at 320-21 (internal quotation marks omitted).

To that end, Stevenson argues there is a factual dispute whether Espinoza warned him before using the taser.  But the only evidence he points to is the surveillance video, which has no audio recording.  That video appears to show Espinoza running to the scene with a taser in his hand.  But contrary to Stevenson's

---

[5] Stevenson argues that the district court erred in granting summary judgment in favor of another defendant, Sergeant Sullivan, but he dismissed his claims against Sullivan with prejudice under Fed. R. Civ. P. 41(a)(1)(A)(i).  *See* Aplee. App. at 16-17.

assertion, it does not clearly show that Espinoza began tasing him immediately and without any warning.  Stevenson also argues there is a factual dispute regarding the number of times he was tased.  But it is undisputed that the tasings were not effective in getting Stevenson to comply with being handcuffed.  Given the circumstances that Espinoza encountered, tasing Mr. Stevenson five (rather than three) times does not alter our analysis.  Espinoza arrived to find Clinkinbeard and another female officer wrestling with Stevenson on the floor in the upper vestibule, an area of the prison accessible by other inmates.  Espinoza's choice to use a taser to try to induce Stevenson to comply with Clinkinbeard's order does not support an inference that he acted maliciously and sadistically to cause Stevenson harm.

### 2.  The Law was not Clearly Established that Espinoza's Use of a Taser would Violate Stevenson's Eighth Amendment Rights

Even were we to hold that Stevenson demonstrated a constitutional violation based on the number of times that Espinoza tased him, summary judgment was still proper because he fails to establish that his Eighth Amendment rights were clearly established with regard to this claim.  "To qualify as clearly established, a constitutional right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  *Redmond*, 882 F.3d at 935 (internal quotation marks omitted).  In determining whether a right is clearly established, we look for a Supreme Court or Tenth Circuit case that is sufficiently on point, or the clearly established weight of authority from other courts.  *Id.*  Ultimately, "existing precedent must have placed the

statutory or constitutional question beyond debate." *Id.* (internal quotation marks omitted).

The district court held that Stevenson's Eighth Amendment rights were clearly established as to all of his excessive force claims. We respectfully disagree.[6] Here, because we conclude that that law was not clearly established, we also affirm summary judgment on this alternative ground. *See Carabajal*, 847 F.3d at 1213 (affirming dismissal of claim on alternate basis that defendant was entitled to qualified immunity because law was not clearly established).

Stevenson relies on *Casey v. City of Federal Heights*, 509 F.3d 1278, 1285-86 (10th Cir. 2007), but that case addressed the use of a taser in the Fourth Amendment context, *see id.* at 1281, which applies to force used "leading up to and including an arrest," *Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010). In light of the different—and higher—standard for liability under the Eighth Amendment, *see id.* at 1325-26, our holding in *Casey* did not provide Espinoza with notice that tasing

---

[6] The district court stated only that "[t]he Supreme Court has long-recognized that the unnecessary infliction of pain on an inmate by a correctional officer violates the Eighth Amendment." R., Vol. VI at 173. But this is not a case in which the constitutional violation was so obvious that the plaintiff's rights were clearly established in the absence of a materially similar prior case. *See Brosseau v. Haugen*, 543 U.S. 194, 199 (2004). Therefore, the district court erred in defining clearly established law at such a "high level of generality." *Redmond*, 882 F.3d at 935 (internal quotation marks omitted). Rather, "[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established. We therefore must determine whether a right is clearly established in light of the specific context of the case, not as a broad general proposition." *Id.* (citation and internal quotation marks omitted).

Stevenson under the circumstances presented here would violate his constitutional rights.

Turning to Eighth Amendment case law, we have not found a Supreme Court decision or a published Tenth Circuit case that is sufficiently on point.[7]  Nor have other circuit court decisions addressed a correctional officer's use of a taser in sufficiently analogous circumstances such that the constitutional question is beyond debate.  *Compare Martinez v. Stanford*, 323 F.3d 1178, 1180, 1183 (9th Cir. 2003) (holding inmate demonstrated Eighth Amendment violation where, after he refused an order, officers struck him with plastic bullets, entered his cell, pushed him to a seated position, tasered him twice "despite his lack of resistance," beat him with their fists and with a wooden baton, and then kicked, hit, and dragged him out of the cell after handcuffing him), *and Hickey v. Reeder*, 12 F.3d 754, 759 (8th Cir. 1994) (holding officers violated inmate's Eighth Amendment rights by using a stun gun on him in his cell to enforce an order to sweep the cell, where the incident did not implicate a security concern or the safety of officers or inmates), *and Lewis v. Downey*, 581 F.3d 467, 479 (7th Cir. 2009) (denying qualified immunity because a reasonable officer would understand that tasing an inmate in his cell without warning when he failed to immediately comply with an order would violate the inmate's

---

[7] In an unpublished case with similar facts, we *upheld* a judgment in favor of correctional officers finding that they had not used excessive force by tasing an inmate after he refused three orders to be handcuffed so officers could remove him from his cell.  *See Jolivet v. Cook*, 48 F.3d 1232, at *1-2 (10th Cir. March 1, 1995) (unpublished).  Our decision did not indicate the number of times the taser was used.

constitutional rights), *with Jasper v. Thalacker*, 999 F.2d 353, 354 (8th Cir. 1993) (holding there was no Eighth Amendment violation where officers grabbed inmate and applied a stun gun to him for several seconds after the inmate refused an order, threatened an officer, and lunged toward him with clenched fists), *and Caldwell v. Moore*, 968 F.2d 595, 596-97, 601-02 (6th Cir. 1992) (holding there was no Eighth Amendment violation where officers entered an inmate's isolation cell, shot him with a stun gun several times, and placed him in a straitjacket after he had refused for seven hours to comply with an order to cease shouting and kicking his cell door).

Because Stevenson fails to demonstrate a constitutional violation or that his Eighth Amendment rights were clearly established with regard to Espinoza's use of a taser, we affirm the district court's grant of summary judgment on that claim.

### 3.    Claim of Excessive Force in Applying the Handcuffs

Stevenson claims that Espinoza used excessive force in slamming the handcuffs on and forcefully squeezing them closed, causing them to cut deep into his skin and cut off his circulation. He invokes the so-called "pinky rule," under which restraints should be applied loosely enough that a finger can fit between the handcuff and the person's wrist. But defendants presented uncontested evidence that this guidance applies when an inmate is being compliant, not when he is physically resisting application of the handcuffs. *See* R., Vol. IV at 264 (Cordova's testimony contrasting a "passive" handcuffing to when officers are struggling to get the handcuffs on an inmate); *id*., Vol. VI at 97 (Clinkinbeard's testimony that "[i]n a tactical situation, where the offender is not compliant [leaving space between the

handcuff and wrist] doesn't always happen").  Here it is undisputed that, at the time
Espinoza applied the handcuffs, Stevenson was resisting the efforts of multiple
officers to physically force him to submit.  Under the undisputed circumstances in
which Espinoza acted, Stephenson fails to show that the evidence supports an
inference of malicious and sadistic conduct.  We therefore affirm the district court's
grant of summary judgment on this claim based on his failure to demonstrate a
constitutional violation.

### 4.    Claim of Excessive Force in Refusing to Loosen Handcuffs

Stevenson maintains that, in granting summary judgment in favor of Williams,
Espinoza, and Clinkinbeard, the district court ignored undisputed evidence that these
defendants were present in the upper vestibule and in close proximity to him while he
repeatedly complained that the handcuffs were excessively tight.  He argues his
claims against these defendants based on their refusal to loosen his handcuffs should
have proceeded to trial.

In its summary judgment order, the district court construed Stevenson's
refusal-to-loosen claims as brought against Cordova and Holloway.  *See* R., Vol. VI
at 194-96.  This is consistent with Stevenson's complaint, in which he alleged that
the supervisor defendants were liable for refusing to check the tightness of the
handcuffs, loosen them, or direct subordinate officers to loosen them.  *See id.*, Vol. I
at 59-61; *see also id.*, Vol. VI at 60-61 (defendants' summary judgment reply brief
quoting complaint and arguing that Stevenson did not allege claims against
Clinkinbeard or Espinoza for refusing to loosen the handcuffs).  Accordingly, we see

no error in the district court's failure to consider evidence on claims against Clinkinbeard and Espinoza that Stevenson did not allege against these defendants in his complaint.

But Stevenson did allege a refusal-to-loosen claim against Lieutenant Williams.  In granting Williams summary judgment, the district court held that the evidence suggested he "remained on the periphery of the incident and played no active role in restraining Plaintiff."  *Id.*, Vol. VI at 197.  Stevenson argues that the court ignored evidence that Williams was present in the upper vestibule from soon after he was handcuffed until he was being wheeled into the yard on the gurney.  He contends that—as the district court held with regard to the other supervisors, Cordova and Holloway—the evidence shows that Williams could hear his complaints about the too-tight handcuffs but took no action to loosen them.

We agree that the district court's reasoning in granting summary judgment in favor of Williams—that he played no active role in restraining Stevenson—fails to address his claim based on Williams's *in*action.  But we need not decide whether the evidence demonstrates a constitutional violation because we conclude that Stevenson fails to show that his Eighth Amendment rights with respect to this claim were clearly established.

He again relies on cases addressing the use of force against an arrestee in circumstances governed by the Fourth rather than the Eighth Amendment.  *See, e.g., Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1208-09 (10th Cir. 2008) (holding police officers were not entitled to qualified immunity on Fourth Amendment

13

excessive force claim where they ignored arrestee's complaints that handcuffs were unduly tight, the arrestee suffered a permanent actual injury, and the constitutional right was clearly established).  And we have not found an Eighth Amendment case with sufficiently analogous facts, in this circuit or otherwise, that would have put Williams on notice that his inaction amounted to cruel and unusual punishment.  Our cases involving a use of force against a prisoner who was restrained involved significantly greater force than the refusal to loosen handcuffs alleged here.  *See Mitchell v. Maynard*, 80 F.3d 1433, 1439, 1440-41 (10th Cir. 1996) (holding jury could find prison guards acted maliciously and sadistically by stripping an inmate, placing him in wrist, ankle, and belly chains, picking him up by his elbows and forcing him to run across a gravel yard, then kicking him when he fell while yelling racial epithets); *Miller v. Glanz*, 948 F.2d 1562, 1564, 1567 (10th Cir. 1991) (holding allegations sufficient to state an Eighth Amendment claim where officers kicked, beat, and choked a prisoner who was handcuffed behind his back and whose ankles were also restrained).

Thus, Williams was entitled to qualified immunity on Stevenson's refusal-to-loosen claim because the law with respect to his Eighth Amendment rights was not clearly established.  We therefore affirm the district court's grant of summary judgment on that claim.

Stevenson has not shown any error in the district court's summary judgment ruling.[8]

## C.   Directed verdict

Stevenson's post-restraint excessive force claims against Benavidez, Holloway, and Cordova proceeded to trial.  At the close of Stevenson's evidence, the district court granted Benavidez's motion for judgment as a matter of law under Fed. R. Civ. P. 50(a), which provides:  "If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may . . . resolve the issue against the party."  The court reviewed the evidence related to Benavidez's use of force.  As seen in the security video, Benavidez lay across Stevenson's legs after he was handcuffed in the upper vestibule, then he stood on the sidelines.  The court credited Stevenson's testimony that when he was strapped to the backboard Benavidez bent his wrist and pulled on his elbow, but let go each time when Stevenson called out in pain.  The district court also noted the undisputed testimony that the officers had difficulty carrying the backboard by its hand-holds with Stevenson strapped to it, and therefore some contact with his body occurred. Finally, the evidence also showed that Benavidez put his hand on Stevenson when he

---

[8] Stevenson also argues that the district court erred in failing to address in its summary judgment order his claim that Cordova's practices, policies, directives, customs, or procedures caused him to be subjected to excessive force by Cordova's subordinates.  But neither the defendants' summary judgment motion nor his response addressed that specific claim.

was lying on the narrow gurney, this time out of concern that the gurney could tip. The court held that a reasonable jury could not conclude from this evidence that Benavidez's conduct was malicious and sadistic.

We review de novo the district court's ruling on a motion for directed verdict, applying the same standard as the district court. *West v. Keef*, 479 F.3d 757, 758 (10th Cir. 2007). Stevenson argues the evidence supports an inference that Benavidez intended to injure him because there was no penological purpose for his conduct when Stevenson was strapped to a backboard and incapable of posing any threat. We see no error. An excessive force claim should not go to the jury unless the evidence "will support a reliable inference of wantonness in the infliction of pain." *Whitley*, 475 U.S. at 322. Here, the evidence regarding Benavidez's conduct falls far short of a showing that the force he used amounted to cruel and unusual punishment. We affirm the entry of judgment as a matter of law in favor of Benavidez.

### D.   Jury Instructions

The district court instructed the jury on the elements of Stevenson's claims against Cordova and Holloway in Instruction Nos. 10 and 11. The jury was required to find that: (1) each defendant used force against him by not loosening the handcuffs; (2) the force used was excessive; and (3) Stevenson suffered harm. The court further instructed the jury that

> [w]hether a use of force against a prison inmate is excessive depends on whether the force was applied in a good-faith effort to maintain or restore discipline, or whether it was done maliciously and sadistically to cause

16

harm.  If the force was used maliciously and sadistically for the purpose of
harming Plaintiff Stevenson, then it was excessive.

R., Vol. VI at 270, 272.  These instructions also defined the terms "maliciously" and

"sadistically," and advised the jury of several non-exclusive factors it could consider

in deciding whether the force used was excessive, including the extent of Stevenson's

injury, the need for applying force, the relationship between the need to apply force

and the amount of force used, the threat reasonably perceived by the officers, and

efforts made to temper the severity of a forceful response.  The jury returned a

verdict finding that Stevenson failed to prove his excessive force claims against

Cordova and Holloway.

    Stevenson raises numerous claims of error in the jury instructions.  He first

contends that the court erred in failing to give instructions on two other theories of

liability:  (1) bystander liability and (2) liability based on Cordova's practices,

policies, directives, customs, or procedures that caused him to be subjected to

excessive force by Cordova's subordinates.  Stevenson also raises several contentions

of error in Instruction Nos. 10 and 11.  He argues these instructions erroneously

omitted (1) that the jury could infer malicious and sadistic intent based on the

defendants' refusal to loosen the handcuffs in the absence of a legitimate penological

purpose, and (2) that the defendants were required to balance the need to maintain or

restore order against the risk of injury, as stated in *Hudson*, 503 U.S. at 6.  He further

contends that the court erred in instructing the jury that his claims against Cordova

and Holloway required evidence of their malicious and sadistic intent rather than their deliberate indifference.

Stevenson did not preserve his claims of error in the jury instructions by objecting at the trial. *See* Fed. R. Civ. P. 51(c)(1) ("A party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection."). We therefore review his contentions only for plain error. Fed. R. Civ. P. 51(d)(2) ("A court may consider a plain error in the instructions that has not been preserved . . . if the error affects substantial rights.").

> To obtain reversal on plain-error review, the appellant must satisfy a four-prong test. It must show (1) an error (2) that is plain, meaning clear or obvious under current law, and (3) affecting substantial rights. If these elements are satisfied, we may exercise discretion to correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings.

*Therrien v. Target Corp.*, 617 F.3d 1242, 1253 (10th Cir. 2010) (internal quotation marks omitted).

Stevenson fails to show plain error in the district court's failure to give instructions on two other theories of liability. After the district court dismissed Benavidez from the case, it declined to instruct the jury on any claim against Cordova and Holloway predicated on a theory of supervisory liability because there was no evidence of a constitutional violation by any subordinate. *See Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010). That same lack of evidence also precluded Stevenson's claim against Cordova based on the theory that his policies,

procedures, etc., caused his subordinates to use excessive force against Stevenson. Moreover, Stevenson never proposed an instruction on that claim, and he fails to point to any evidence at trial supporting that theory of liability.

Stevenson did propose an instruction that the defendants had a duty to intervene when they witnessed other correctional officers violating a prisoner's constitutional rights. He argues his proposed instruction correctly stated the law on bystander liability. But when Cordova and Holloway were the only remaining defendants, the district court ruled that the claims against them were limited to whether they had used excessive force in refusing to loosen the handcuffs. If it was error not to also instruct the jury on bystander liability as between Cordova and Holloway, the error was not plain and Stevenson's substantial rights were not affected. He has not shown any error with respect to the district court's failure to give either of these instructions on alternate theories of liability.

Regarding Instruction Nos. 10 and 11, Stevenson raised one of his appeal contentions in his motion for new trial under Fed. R. Civ. P. 59(a). He argued that the district court erroneously omitted an instruction that the defendants' requisite intent—using force against him maliciously and sadistically—could be inferred from the absence of evidence of a legitimate penological purpose. The district court held that Stevenson waived this argument under the invited-error doctrine because he had stipulated to the pertinent portions of Instruction Nos. 10 and 11. *See United States v. Fields*, 516 F.3d 923, 939 (10th Cir. 2008) ("[T]he invited-error doctrine precludes a party from arguing that the district court erred in adopting a proposition that the

party had urged the district court to adopt." (internal quotation marks omitted)).  The

court also held that Stevenson failed to demonstrate error because the instructions

directed the jury to decide whether the use of force was a "good faith effort to

maintain or restore discipline," which the court equated with "a legitimate

penological purpose."  Stevenson does not show that the district court abused its

discretion in denying this claim of error on either basis.  *See Cavanaugh v. Woods*

*Cross City*, 718 F.3d 1244, 1250 (10th Cir. 2013) (reviewing denial of Rule 59

motion for abuse of discretion).

The same reasoning applies to Stevenson's claim that the court failed to

instruct the jury that the defendants were required to balance the need to maintain or

restore order against the risk of injury.  He waived this argument by stipulating to

Instructions 10 and 11, and he also fails to show plain error in light of the inclusion

in these instructions of a list of non-exclusive factors that the jury was to consider in

deciding whether the force used was excessive.

Finally, Stevenson also fails to show plain error in the district court's

instruction on the state of mind necessary to find that Cordova and Holloway used

excessive force.[9]  He argues the standard should have been deliberate indifference.

We have applied that standard to a supervisor's liability for a subordinate's use of

---

[9] Stevenson asserts that he raised this objection during the jury instruction conference, but he objected to the use of "malicious *and* sadistic" in the instructions rather than "malicious *or* sadistic."  That objection did not preserve his argument that the proper state of mind for liability is deliberate indifference.  *See Therrien*, 617 F.3d at 1252.

excessive force against a prisoner.  *See Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151-52 (10th Cir. 2006).  But it remains an open question whether that standard still applies in the wake of the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  *See Dodds*, 614 F.3d at 1197-99 (discussing *Iqbal* and concluding that a claim against a supervisory defendant must allege that he acted with the state of mind necessary to establish the alleged constitutional violation).  To the extent that Stevenson is challenging the district court's decision not to give an instruction on supervisory liability based upon the defendants' deliberate indifference, the lack of evidence of any constitutional violation by a subordinate precluded that theory of liability.  And he otherwise fails to demonstrate that Instruction Nos. 10 and 11 erroneously required the jury to find that Cordova and Holloway acted maliciously and sadistically in refusing to loosen the handcuffs, as is required for liability on an Eighth Amendment claim of excessive use of force.  *See Hudson*, 503 U.S. at 6-7.

### E.    Pending Motions

We dispose of Stevenson's pending motions as follows:  We grant Stevenson's motion to proceed on appeal without prepayment of costs and fees.  We deny his motion for free transcripts pursuant to 28 U.S.C. § 753(f) as unnecessary.  The record on appeal now includes the complete trial transcript, which was included in the district court docket.  This court has reviewed the trial transcript in ruling on Stevenson's appellate issues.  We also deny his motion to include certain deposition transcripts in the record on appeal because the record includes the deposition transcripts submitted as exhibits to the parties' summary judgment filings.  We deny

his motion to file an oversized reply brief.  We deny as moot his renewed motion to appoint counsel and his motion for a mandatory injunction.

**III.   Conclusion**

The district court's judgment is affirmed.

Entered for the Court


Mary Beck Briscoe
Circuit Judge

### UNITED STATES COURT OF APPEALS
### FOR THE TENTH CIRCUIT
### OFFICE OF THE CLERK

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Elisabeth A. Shumaker                                                          Chris Wolpert
Clerk of Court                         May 11, 2018                    Chief Deputy Clerk


Mr. William R. Stevenson
BCCF - Bent County Correctional Facility
11560 Road FF75
Las Animas, CO 81054
#110913

**RE:**     **17-1053, Stevenson v. Cordova, et al**
         Dist/Ag docket: 1:14-CV-00649-CBS

Dear Appellant:

Enclosed is a copy of the order and judgment issued today in this matter. The court has
entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Please contact this office if you have questions.

                                       Sincerely,

                                       *Elisabeth A. Shumaker*

                                       Elisabeth A. Shumaker
                                       Clerk of the Court


cc:     Craig W Cain
        Jennifer Lynn White


EAS/at